## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| Randy Brackins El, | ) | |
| Plaintiff | ) | |
| v. | ) | **Case No. 5:26-cv-00205-LCB** |
| Lisa Bates, United States Department of Justice, NASA et al., | ) ) | |
| Defendants. | | |

## SUPPLEMENTAL MOTION FOR JUDICIAL DISQUALIFICATION AND RECUSAL

### I. FEDERAL JUDICIAL RECUSAL AUTHORITY

Pursuant to 28 U.S.C. §§ 144, 455(a), and 455(b)(1), the Plaintiff respectfully demands the immediate disqualification and recusal of Judge Liles Burke from all further proceedings in this matter. This motion arises from the appearance of partiality, personal bias, and a well-documented pattern of retaliatory conduct affecting Attorney Kimberly A. Ford, who is Counsel of Record in the above-captioned action.

### II. DOCUMENTED RETALIATORY CONDUCT BY JUDGE BURKE

Attorney Ford was arrested and shackled on February 6, 2026, during the pendency of filings directly implicating Judge Burke in retaliatory judicial acts. Public booking photographs confirm the seizure occurred contemporaneously with protected litigation activity.

The arrest followed Burke's issuance of judicial sanctions in unrelated state litigation (Jefferson County Circuit Court No. 01-CV-2024-903673), which were later challenged in both the Alabama Supreme Court (SC-2025-0903) and federal forums. The Alabama State Bar has opened grievance file CSP 2026-141 but has declined to open formal investigation at this time.

## III. LEGAL GROUNDS FOR DISQUALIFICATION

Under 28 U.S.C. § 455(a), disqualification is required where the judge's impartiality might reasonably be questioned. Attorney Ford's arrest, sanctions exposure, and loss of liberty occurred during filings that named Burke and intersect with matters of this federal complaint.

Under 28 U.S.C. § 455(b)(1), recusal is mandatory where the judge has personal bias or prejudice concerning a party. The pattern of public targeting and the activation of bar scrutiny under Burke's prior rulings meet this threshold.

An affidavit of bias or prejudice would be sufficient under 28 U.S.C. § 144 to bar Judge Burke from proceeding further. The record supports both actual and apparent bias requiring disqualification under <u>Caperton v. A.T. Massey Coal Co.</u>, 556 U.S. 868 (2009).

## IV. DEMAND FOR IMMEDIATE RELIEF

Plaintiff demands the following:
1. Disqualification of Judge Liles Burke from all proceedings in Case No. 5:26-cv-00205-LCB;

2. Reassignment to a neutral Article III judge with no prior connection to Attorney Ford or any disciplinary actions affecting her;

3. Judicial notice of the retaliatory sequence including arrest, sanctions, and bar referrals triggered by filings tied to Burke;

4. Preservation of jurisdictional integrity under 28 U.S.C. § 1651 and 28 U.S.C. § 1331.

Respectfully submitted this 10th day of February, 2026. I declare under penalty of perjury that the foregoing is true and correct. Executed on February 10th, 2026 at Huntsville, AL.

/s/ Kimberly A. Ford
Kimberly A. Ford (ASB-4139-r80f)
FORDUMAS LLC
470 Providence Main, Suite 302C
Huntsville, AL 35806
Ofc:  256-886-6240
Facsimile:  1-800-408-1501
kimberly@fordumas.com
Attorney for Appellant

## CERTIFICATE OF SERVICE

I do hereby certified that I have served a copy of the foregoing on all interested parties via the electronic filing system, by email or first class, certified mail return receipt:

Attn: Pamela Bondi, U.S.Attorney General
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

United States Department of Justice
United State's Attorney's Office, Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203

United States Office of Special Counsel
Attn:  Paul Ingrassia, Special Counsel
1730 M Street NW, Suite 218
Washington, DC 20036-4505

United States Marshals Service, Northern District of Alabama
Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Greer M. Lynch, Clerk of Court
U.S. District Court, Northern District of Alabama

1729 5th Avenue North
Birmingham, AL 35203

Internal Revenue Service (IRS)
Attn: Scott Bessent, Acting Commissioner
1111 Constitution Avenue, NW
Washington, DC. 20224

United States Department of the Treasury
Attn: Office of the General Counsel
1500 Pennsylvania Avenue, NW
Washington, DC 20220

National Aeronautical and Space Administration (NASA)
Attn: Office of the General Counsel
300 E Street SW, Suite 0V30
Washington, DC 20546

NASA Marshall Space Flight Center (MSFC)
Attn: John Pelfry, Center Director and the Office of the General
Counsel
Mail Code LS01
Huntsville, AL 35812

John K. White
3700 Governor's Drive NW, Unit 213
Huntsville, AL 35805-3561

Paula DeCaesaris
2890 High Mountain Road, NE
Huntsville, AL 35811

Larry Mack
143 Fernbridge Blvd.
Madison, AL 35758-7556

Pamela Bourque

155 Intercostal Dr.
Madison, AL 35758-9425

Phillip Jeff Morton
1260 Balch Road, Apt. 3202
Madison, AL 35757-6396

Paul R. Sullivan
2211 Cedar Cove Ct.
Reston, VA 20191-4108

Wendell Scott Stewart
244 Rosecliff Drive
Harvest, AL 35749

Stanley Rhodes
133 Vaughnwood Trace
Huntsville, AL 35806-4085

Sherry Huddleston
136 Jay Crawford Rd.
Baileyton, AL 35019

Dwight Mosby
26 Wax Lane SW
Huntsville, AL 35824

Kristin Pollard Kiel
19 America Way SW
Huntsville, AL 35824

Hon. Ruth Ann Hall
XXXX
XXXXXXX

On this the 10th day of February, 2026.

*/s/ Kimberly A. Ford*

**AFFIDAVIT OF RANDY BRACKINS EL**

**IN SUPPORT OF ATTORNEY KIMBERLY A. FORD**

I, Randy Brackins El, being first duly sworn, depose and state as follows:

1. Identity and Capacity
   1. I am an adult resident of the State of Alabama.
   2. I am the Beneficiary and authorized representative of the Brackins El Private Estate Trust.
   3. I make this affidavit in support of Attorney Kimberly A. Ford in connection with disciplinary and judicial proceedings arising from litigation that began in federal court and later continued in the Merit Systems Protection Board and other forums.
   4. I have personal knowledge of the facts stated in this affidavit, except where I indicate that a statement is based on information and belief. Where I rely on information and belief, I believe the facts stated are true.
2. Background of the Underlying Case

   5. Attorney Ford has represented my interests and the interests of the Brackins El Private Estate Trust in matters involving NASA, the United States Department of Justice, the Merit Systems Protection Board, and related federal and state proceedings.
   6. In the underlying litigation, Judge Liles C. Burke of the United States District Court for the Northern District of Alabama entered orders that were later the subject of mandamus and appellate scrutiny.
   7. As a result of those higher court actions, the matter was remanded out of Judge Burke's court and prior orders were treated as void or without continuing legal effect, to my understanding and belief.
   8. After remand and nullification of those prior orders, I reasonably expected that any further involvement by Judge Burke would be limited and neutral, and that any disputes about my federal employment and my attorney's conduct would proceed through proper channels with due process.
3. Role of Attorney Ford as Fiduciary Counsel

   9. At all relevant times, Attorney Ford acted as fiduciary counsel for me and for the Brackins El Private Estate Trust.
   10. She has consistently filed pleadings in trust posture, made clear that she was protecting trust interests, and has sought to enforce constitutional and statutory protections on my behalf and on behalf of the Trust.
   11. In my direct experience, Attorney Ford has been diligent, responsive, and professional. She has kept me informed, consulted with me regarding strategic decisions, and has never advised me to violate any court order or ethical rule.

1

12. I have never known Attorney Ford to engage in dishonesty, fraud, or conduct prejudicial to the administration of justice. To the contrary, she has consistently attempted to correct the record and expose procedural irregularities through lawful filings.

4. Escalation of Judicial Retaliation After Remand

13. After prior federal orders were nullified and the case was remanded out of Judge Burke's courtroom, I observed a pattern of conduct that, in my view, departed from neutral fact finding and took on the character of personal retaliation against Attorney Ford.

14. Judge Burke continued to involve himself in matters connected to my employment dispute and to Attorney Ford's representation, even though the original federal case had been remanded and my main action proceeded in other forums, including the Merit Systems Protection Board and the Eleventh Circuit Court of Appeals.

15. On information and belief, Judge Burke or his chambers were involved in or connected to disciplinary complaints and communications with Bar authorities that targeted Attorney Ford at the same time she was actively litigating on my behalf in MSPB, the Eleventh Circuit, and the Alabama Supreme Court.

16. These actions occurred in close temporal proximity to filings where Attorney Ford challenged NASA, DOJ, and prior void federal orders, and where she raised serious allegations of due process violations and jurisdictional overreach.

17. Based on this timing and sequence, I believe that the disciplinary and contempt actions against Attorney Ford were not neutral regulatory responses, but rather were triggered by her zealous advocacy on my behalf and her success in securing remand and exposing procedural defects.

5. Detention, Shackling, and Coerced "Compliance"

18. On or about February 7, 2026, I was informed that United States Marshals took Attorney Ford into custody on a civil contempt issue arising from orders associated with Judge Burke.

19. I was informed, and do believe, that Attorney Ford was physically shackled and transported while in custody, which is inconsistent with a routine civil compliance issue and had the effect of humiliating her and intimidating counsel.

20. I understand that while in custody, Attorney Ford was required to sign "compliance" documents and to send emails to multiple court clerks stating that she had been "disbarred" or was otherwise unable to practice, even though there had been no final lawful disbarment order in a proper disciplinary proceeding.

21. I further understand that in order to secure her release, Attorney Ford was instructed to use her phone and tablet to send out mass communications about her alleged inability to practice, under the supervision of law enforcement, while in a custodial setting.

22. These acts, in my view, went far beyond any legitimate need to secure compliance with a lawful order and instead served to damage Attorney Ford's professional reputation, create a false public impression of disbarment, and chill her ability to continue representing me and the Trust.

2

23. I am informed that Attorney Ford signed the compliance documents under protest and under duress, including by writing UCC 1 308 "all rights reserved" language, which is consistent with my understanding that she did not freely consent to the statements demanded of her.

6. Effect on My Representation and on the Trust

24. As a direct result of these events, I experienced immediate fear that I would lose my counsel while critical deadlines were pending in MSPB, the Eleventh Circuit, and the Alabama Supreme Court.
25. The detention and shackling of my counsel while she served as fiduciary attorney for the Trust interfered with my access to counsel, disrupted ongoing litigation, and created confusion among court clerks about her status.
26. The forced emails and "compliance" documents made it appear as if my attorney had been lawfully disbarred or prohibited from practice, which is not consistent with the actual status of her bar license at the time, to my understanding and belief.
27. These actions harmed my ability to enforce my rights as a disabled veteran and a federal employee, and damaged the Trust's ability to secure fair and impartial adjudication.

7. Prior Warnings and Constructive Notice

28. Before Attorney Ford was detained, we had already placed multiple tribunals on notice, including the Eleventh Circuit, the MSPB, and the Alabama Supreme Court, that coordinated retaliation against counsel was occurring and that such retaliation created irreparable harm.
29. We filed emergency supplemental notices, writs of mandamus, and trust based filings that specifically warned of ongoing interference with fiduciary counsel and requested judicial protection.
30. Despite those warnings, further actions were taken against Attorney Ford that escalated from paper disciplinary proceedings into physical detention and compelled statements.
31. In my view, these later acts confirm the pattern of retaliation that had already been described to the courts and oversight bodies and demonstrate that prior constructive notice was ignored.

8. Opinion as to Retaliation and Jurisdictional Overreach

32. Based on my direct dealings with Attorney Ford, my review of filings, and the sequence of events, I believe that Judge Burke's later actions, after remand and nullification of prior orders, departed from neutral adjudication and became personal and retaliatory in nature.
33. I further believe that using civil contempt and detention to force an attorney to send humiliating emails about disbarment to court clerks, in the middle of active federal litigation and pending appellate review, constitutes jurisdictional overreach and abuse of judicial authority.

3

34. I offer this opinion not as a legal conclusion for the Bar to adopt, but as a factual description of what I have observed and experienced as a client and trust beneficiary whose counsel was targeted.

9. Character of Attorney Ford

35. Throughout my dealings with Attorney Ford, she has conducted herself with honesty, diligence, and respect toward the courts, even when strongly disagreeing with rulings.
36. She has consistently advised me to comply with lawful orders while preserving objections through appropriate legal channels.
37. I have never observed her to act in bad faith, to deceive a court, or to put her own interests ahead of mine or the Trust's interests.
38. In my view, the proceedings and actions taken against her do not reflect any real ethical unfitness, but instead reflect retaliation for her effective advocacy in challenging powerful institutional actors.

10. Request to the Bar

11. I respectfully request that any Bar tribunal reviewing Attorney Ford's conduct consider this sworn account and the full procedural history, including the prior nullification of federal orders and subsequent remand.
12. I further request that the Bar recognize that punishing an attorney for representing a disabled veteran and a private trust in contentious litigation, especially where there is evidence of judicial overreach and coercive detention, will have a chilling effect on the willingness of other attorneys to take on similar cases.
13. My purpose in submitting this affidavit is to protect truth, to protect my counsel, and to protect the integrity of the legal system, not to attack the judiciary. I affirm these statements under oath so that the Bar may have a complete factual record before taking any action.

Further affiant sayeth naught. _Ra-El (Beneficiary: Brackins EL Private Estate Trust_

Randy Brackins El   UCC 1-308 All Rights Reserved Trust

Beneficiary, Brackins El Private Estate Trust   without Prejudice

Date: February 8th, 2026

NOTARY ACKNOWLEDGMENT

State of _Alabama_
County of _Bibb_

Subscribed and sworn to before me this __8th__ day of __February__, 2026, by Randy Brackins El, who is personally known to me or who has produced _Alabama Driver License_ as identification.

_Kaymik A Bramet Sile_
Notary Public

My commission expires: __10/19/2026__



# IN THE SUPREME COURT OF ALABAMA

## Case No.: SC-2025-0903

EX-PARTE BRACKINS EL PRIVATE ESTATE TRUST

| | |
|---|---|
| In RE: Beneficiary, Brackins El Private Estate Trust, | ) |
| | ) |
| v. | ) |
| | ) |
| Wendell Scott Stewart, Stanley Rhodes, Sherry Huddleston, | ) |
| Craig White, John "Kris" White, Kristin Pollard Kiel, Pam | ) |
| Bourque, Larry Mack, Phillip Jeff Morton, Paul Sullivan, | ) |
| Paula DeCesaris, U.S. Department of Justice (DOJ), U.S. Office | ) |
| of Special Counsel (OSC), Internal Revenue Service (IRS), | ) |
| Treasury Inspector General for Tax Administration (TIGTA), | ) |
| National Aeronautics and Space Administration (NASA) and | ) |
| the Honorable Ruth Ann Hall, Hon. Liles C.Burke, Hon. R.David | ) |
| Proctor, United States Marshalls, Northern District of Alabama, Merit | |
| Systems Protection Board, Hon. Joel T. Alexander, Hon.Christopher | |
| Sprague, | ) |
| | ) |
| Trustees De Son Tort. | ) |

From the Circuit Court of Madison County, Alabama
Cases No.: 47-CV-2025-901619.00 and 47-
CV-2025-901675

# EX PARTE SUPPLEMENTAL NOTICE OF JUDICIAL RETALIATION AND
# TRUST INTERFERENCE

Kimberly A. Ford, Esq.(FOR063)
Counsel for the Brackins El Private Estate Trust

FORDUMAS LLC

470 Providence Main, Suite 302C
Huntsville, AL 35806
ofc: 256.886.6240. facsimile 1-800-408-1501
kimberly@fordumas.com

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust. Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.

# NOTICE OF EX PARTE PRIVATE TRUST MATTER

This record is entered for evidentiary and notice purposes only. Nothing herein shall be construed as a voluntary submission to jurisdiction or public adjudication. Entry into the record does not waive any rights, remedies, or private status.

This documents is being recorded on the public record for the sole purpose of giving constructive notice of the existence of a private trust. This document, its terms, and its parties remain private, non-public, and are not submitted for adjudication or administrative review. All rights reserved, none waived. Recording of this document does not constitute a waiver of privacy, ownership, or trustee discretion, and does not confer jurisdiction or authority to any public agency, officer, or court to modify, interpret, or intervene in the private affairs of the trust. This record is evidence of status only.

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust. Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.

**This document is protected under the principles of private contract, Article I Section 10 of the United States Constitution, and applicable trust law. No part of this instrument may be construed to place the trust corpus, affairs, or administration under public authority. "Equity regards the beneficiary as the true owner."**

- "Equity imputes intention to fulfill obligation."
- "Equity looks to substance, not form."
- "Trust follows the law, but equity governs the duty."
- "Where equity is equal to the law, equity shall prevail."
- "Equity acts in personam, not in rem."

## NOTICE TO CLERK:

This filing is not adversarial. No joinder is granted. This instrument is a private equity record and must be docketed pursuant to The Federal Rules of Civil Procedure 5(d)(4) Alabama Rule of Civil Procedure 5. The Court and its clerks act ministerially under notice of trust possession. Any further statutory interpretation or adversarial designation is hereby rebutted by trust record.

*/s/ Beneficiary*

# Notice and Command to Clerk of Court

Let this Notice be entered as formal and final command to the Clerk of Court to seal the Equity Docket pertaining to the Brackins El Private Estate Trust.

All filings have been duly and lawfully entered under private trust jurisdiction. The forum has been noticed, fiduciary breaches declared, dishonors recorded, and equity affirmed. The Office of the Beneficiary now issues this lawful demand for ministerial compliance by the Clerk:

• To seal the record,

• To protect the corpus, and

• To conclude the matter in accordance with law, duty, and equity.

Authority and Legal Foundation

• Ministerial Duty Under FRCP 5(d)(4) and ARCP 5, the Clerk may not refuse filings for form alone and must execute nondiscretionary ministerial duties. Failure to comply constitutes breach and

administrative dishonor, enforceable by surcharge and nunc pro tunc correction.

• Administrative Doctrine Pursuant to IRS Manual §21.7.13.3.2.1, only the Beneficiary lawfully appointed possesses final ledger and accounting authority. Further, IRS Manual §4.25.6.1 mandates full accounting upon fiduciary failure.

## Equity Jurisprudence

• Pomeroy §§395, 818 affirms closure of equity record in favor of the trust upon fiduciary failure.

• Blackstone, Book III, Ch. 23 establishes private rights restored upon judicial default.

• Lewin §935 confirms fiduciary silence or neglect closes the record to equity in favor of the trust.

## Maxims of Equity

• Equity delights in the end of litigation.

• Where the duty is ministerial, the act is mandatory.

- The record speaks for itself and binds the conscience of the court.

Final Admonition

- The Clerk is hereby warned: Any refusal to seal constitutes ministerial breach and unauthorized tampering with a private trust corpus. Such refusal will trigger notice of ministerial default and liability by surcharge.

- "For by thy words thou shalt be justified, and by thy words thou shalt be condemned." Matthew 12:37

Issued under Seal and Authority of the Beneficiary, Brackins El Private Estate Trust

"Pursuant to IRS Manual §21.7.13.3.2.1, IRS protocol requires recognition of the duly appointed Beneficiary as the party authorized to file and account on behalf of the estate. Likewise, IRS Manual §4.25.6.1 instructs examiners to demand full accounting where fiduciary failure occurs. These administrative protocols parallel and reinforce equity's own requirement that fiduciaries be held to full accounting."

Dated: February 7, 2026

# EX PARTE SUPPLEMENTAL NOTICE OF JUDICIAL RETALIATION AND TRUST INTERFERENCE

COMES NOW, Brackins El Private Estate Trust, by and through its undersigned fiduciary counsel and TTEE, Kimberly A. Ford, and provides this Ex Parte Supplemental Notice of Judicial Retaliation and Trust Interference and in support states, as follows:

## I. PURPOSE OF THIS SUPPLEMENTAL NOTICE

This filing supplements the record with real-time evidence of unlawful judicial retaliation, coercive detention, and trust interference by U.S. District Judge Liles C. Burke. The Trust affirms all prior filings and asserts this record constitutes irreparable harm, jurisdictional breach, and immediate intervention necessity under both federal and state equity principles.

## II. MATERIAL FACTS AND PROCEDURAL HISTORY

1. On February 6, 2026, Attorney Kimberly A. Ford, fiduciary legal counsel and TTEE to the Brackins El Private Estate Trust, was detained by U.S. Marshals under a purported civil contempt order issued by Judge Burke.

2. No lawful criminal charge or adjudicated finding of contempt exists.

3. She was compelled to sign a "Certificate of Compliance" under duress, noting UCC 1-308 protections and reserving all rights.

4. The detention order stemmed from Judge Burke's January 23, 2026 void order (ECF No. 37) in 5:25-cv-1568-LCB while appellate review is pending in the Eleventh Circuit under docketed mandamus.

5. The actions taken were in retaliation for protected legal filings and trust enforcement activity, creating structural constitutional violations and public scandal.

## III. LEGAL VIOLATIONS AND DOCTRINAL BREACHES

- First Amendment Retaliation: Chilling legal speech through incarceration.

- Fifth and Fourteenth Amendment Due Process Violations: Coerced compliance outside lawful process.

- <u>Steel Co. v. Citizens</u>, 523 U.S. 83 (1998): Jurisdictionally void order while appellate review is live.

- UCC 1-308: Valid reservation of rights under economic duress.

- Rule 11: Forced false filings under threat violate ethical and procedural integrity.

## III-A. Governing Equitable Maxims and Jurisdictional Authority

The following equitable maxims, drawn from the foundational works of Pomeroy, Lewin on Trusts, and Blackstone, govern the enforcement of trust rights, define the limits of judicial power, and confirm the supremacy of equity where statutory actors act beyond their authority.

1. Equity regards that as done which ought to have been done (Pomeroy §363). Judge Burke's failure to recognize the Eleventh Circuit's live jurisdiction, and the issuance of orders post-mandamus filing, are deemed void acts in equity, requiring reversal and full restoration.

2. Equity acts in personam (Pomeroy §364). Equity binds the actor, not merely the office. Burke, the DOJ, and all coordinating officers are individually liable where they operate outside lawful power and against conscience.

3. Where there is equal equity, the law prevails; where equities are unequal, the superior equity governs (Pomeroy §374). The perfected trust right, established prior to the disputed acts, is the superior equity and overrides any procedural posture asserted by actors without lawful jurisdiction.

4. Equity will not suffer a wrong without a remedy (Pomeroy §386). The unlawful detention of fiduciary counsel under color of void contempt constitutes a wrong for which equity compels immediate relief.

5. A trustee de son tort incurs all the liabilities of a lawful trustee (Lewin on Trusts, 19th ed., §42-§43). Burke and DOJ officials who acted to control, interfere with, or retaliate against trust enforcement became constructive trustees and are liable for breach, surcharge, and fiduciary misconduct.

6. The court of equity is the conscience of the trustee (Lewin, §47). Where judicial actors deviate from law and conscience, equity jurisdiction arises to compel correction and restore injured rights.

7. The beneficiary is the equitable owner of the trust corpus, including all enforcement rights (Lewin §31). The Trust's power to

appoint and act through fiduciary counsel cannot be overridden by any Article III actor or statutory office.

8. **A seizure without law is a trespass ab initio** (Blackstone, Commentaries Book 3, Chapter 12). <u>Where no valid contempt order</u> <u>or warrant existed</u>, Attorney Ford's detention was **void** from inception and actionable in both equity and law.

9. Whenever the law gives a right, it gives a remedy (Blackstone, Book 3, Ch. 23). <u>The Trust and fiduciary counsel</u> **hold both** the <u>right to petition</u> and the <u>right to be free from retaliation,</u> which demands enforceable redress.

## III-B. Conscience Clause

Equity is not merely procedural; it is rooted in moral conscience and the **duty of courts to do justice when law has been perverted**. The following scriptures reflect the conscience-based obligations upon officers of the court and justify emergency equity intervention:

1. "A judge should not engage in any form of harassment… A judge should not retaliate against those who report misconduct" - Code of Conduct for United States Judges, Canon 2, Commentary.

2. "**Woe unto them that decree unrighteous decrees, and that write grievousness which they have prescribed; to turn aside the needy from judgment**" - Isaiah 10:1-2. This confirms that retaliatory orders to suppress lawful filings are condemned both by law and by moral conscience.

3. "He that justifieth the wicked, and he that condemneth the just, even they both are abomination" - Proverbs 17:15. Any judicial endorsement of unlawful contempt or suppression of fiduciary duties is a breach of both legal ethics and judicial oath.

4. "Open thy mouth, judge righteously, and plead the cause of the poor and needy" - Proverbs 31:9. The judiciary is commanded not to turn away from the equitable cause of those enforcing private rights against government misconduct.

5. "Thou shalt not pervert the judgment of the stranger" - Deuteronomy 24:17. This extends to all who stand in representative capacity for another, including fiduciary counsel acting on behalf of a private trust.

## IV. TRUST DEMANDS

1. Immediate judicial review and nullification of all actions flowing from ECF No. 37.

2. Referral of Judge Burke for judicial discipline under 28 U.S.C. §§ 351- 364.

3. State-level protective intervention by the Alabama Supreme Court under emergency equity.

4. The Brackins El Private Estate Trust demands restoration of all Trust Res, full accounting, equitable surcharge (immediate reinstatement of beneficiary to his prior position, making him whole) and full restoration and full accounting of all detrimental harm in which all Trustees De Son Tort have perverted. Preservation of Attorney Ford's standing, professional rights, licensure, protection from all actors, Trustees De Son Tort, and an immediate injunction for all present and future intermeddling in client representation.

5. Formal acknowledgment of Trust jurisdiction and restitution for retaliatory harm.

# V. CONCLUSION

This Trust record and its equity representatives hereby provide notice of expanded judicial misconduct and coercion, substantiating immediate judicial relief. The Eleventh Circuit and the Alabama Supreme Court are now on record. Silence shall be deemed assent.

Respectfully submitted this 7th day of February, 2026. I declare under penalty of perjury that the foregoing is true and correct. Executed on February 7, 2026 at Huntsville, Alabama.

**By:** /s/ Executor, Brackins El Private Estate Trust
**Executor, Brackins El Private Estate Trust**
Brackins El Private Estate Trust
6675 County Road 2023 Danville, AL 35619

This communication is submitted strictly from the Office of Fiduciary Counsel on behalf of the Brackins El Private Estate Trust and is not, nor shall it be construed as, consent to joinder, suretyship, or appearance on behalf of any artificial person, legal fiction, or U.S. citizen designation. All rights are reserved under equitable jurisdiction, and the undersigned operates solely in her capacity as Fiduciary

Counsel to the Trust, under the express authority of the Executor and in protection of the Res.

Pursuant to UCC §1-308, all rights and remedies are expressly reserved without prejudice. No statements herein shall be deemed a waiver of Trust separation, nor construed as a submission to any foreign or statutory jurisdiction. The Brackins El Trust is a private estate existing in equity, and all parties are hereby noticed that any presumption of agency, joinder, or citizenship-based authority is expressly rebutted nunc pro tunc to original formation.

Respectfully submitted this 7th day of February, 2026. I declare under penalty of perjury that the foregoing is true and correct. Executed on February 7, 2026 at Huntsville, Alabama.

*/s/ Kimberly A. Ford*
Kimberly A. Ford
Fiduciary Counsel and TTEE for Brackins El Private Estate Trust
FORDUMAS LLC
*Law, Consulting and Mediation Firm*
470 Providence Main, Suite 302C
Huntsville, AL 35806
Ofc: 256.886.6240
Facsimile: 1-800-408-1501
kimberly@fordumas.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limitation set

forth in Ala.R.App.P. 28(j)(1). According to the word count function of Apple Pages, this notice contains 1725 words from the first paragraph under the initial header through the conclusion. I further certify that this notice complies with the font requirement set forth in Ala. R.App. P. 32(a)(7). The notice was prepared in the Century Schoolbook front using 14-point type. See Ala. R. App.P. 32(d).

## CERTIFICATE OF SERVICE

I do hereby certified that I have served a copy of the foregoing on all interested parties via the electronic filing system, by email or first class, certified mail return receipt:

Attn: Pamela Bondi, U.S.Attorney General
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

United States Department of Justice
United State's Attorney's Office, Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203

United States Office of Special Counsel
Attn: Paul Ingrassia, Special Counsel
1730 M Street NW, Suite 218
Washington, DC 20036-4505

United States Marshals Service, Northern District of Alabama
Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Greer M. Lynch, Clerk of Court
U.S. District Court, Northern District of Alabama
1729 5th Avenue North
Birmingham, AL 35203

Internal Revenue Service (IRS)

Attn: Scott Bessent, Acting Commissioner
1111 Constitution Avenue, NW
Washington, DC. 20224

United States Department of the Treasury
Attn: Office of the General Counsel
1500 Pennsylvania Avenue, NW
Washington, DC 20220

National Aeronautical and Space Administration (NASA)
Attn: Office of the General Counsel
300 E Street SW, Suite 0V30
Washington, DC 20546

NASA Marshall Space Flight Center (MSFC)
Attn: John Pelfry, Center Director and the Office of the General Counsel
Mail Code LS01
Huntsville, AL 35812

John K. White
3700 Governor's Drive NW, Unit 213
Huntsville, AL 35805-3561

Paula DeCaesaris
2890 High Mountain Road, NE
Huntsville, AL 35811

Larry Mack
143 Fernbridge Blvd.
Madison, AL 35758-7556

Pamela Bourque
155 Intercostal Dr.
Madison, AL 35758-9425

Phillip Jeff Morton
1260 Balch Road, Apt. 3202
Madison, AL 35757-6396

Paul R. Sullivan

2211 Cedar Cove Ct.
Reston, VA 20191-4108

Wendell Scott Stewart
244 Rosecliff Drive
Harvest, AL 35749

Stanley Rhodes
133 Vaughnwood Trace
Huntsville, AL 35806-4085

Sherry Huddleston
136 Jay Crawford Rd.
Baileyton, AL 35019

Dwight Mosby
26 Wax Lane SW
Huntsville, AL 35824

Kristin Pollard Kiel
19 America Way SW
Huntsville, AL 35824

Hon. Ruth Ann Hall
XXXX
XXXXXXX

Hon. Liles C. Burke
XXXXXXX
XXXXXXXX

Hon. R. David Proctor
XXXXXXXX
XXXXXXXX

Merit Systems Protection Board
Atlanta Regional Office
401 W. Peachtree St., NW, 10th Floor
Atlanta, GA 30308-3519

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust. Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.

Alexander, Hon. Joel T.
XXXX
XXXXXXX

Sprague, Hon.Christopher G.
XXXXX
XXXXX

On this the 7th day of February, 2026.

*/s/ Kimberly A. Ford*

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
## Case No.: 25-14521

_____

(In re: Brackins El Private Estate Trust

v.

**LILES C. BURKE, U.S. District Judge** and **Greer M. Lynch, Clerk of Court** for the United States District Court for the Northern District of Alabama, **Merit Systems Protection Board**, **NASA**, **NASA employees from consolidated cases**, **Department of Justice**,

Trustees De Son Tort.


## EX PARTE EMERGENCY SUPPLEMENTAL NOTICE - UNLAWFUL DETENTION AND SHACKLING OF FIDUCIARY COUNSEL


FROM THE MERIT SYSTEMS PROTECTION BOARD, Atlanta Regional Office
Appeal No: 2026A001840


Docket No.: AT-1221-26-0143-W-1 and Related Case Nos.**:** 25-13497 and 5:25-cv-01568; 5:25-cv-01600; 5:25-cv-01607, and 5:25-cv-01685 from the United States District Court for the Northern District of Alabama.


Kimberly A Ford, Esq. (FOR063)
Counsel for Randy Brackins El
Fordumas LLC
*Law, Consulting and Mediation Firm*
470 Providence Main, Suite 302C
Huntsville, AL 35806
Ofc:  256.886.6240
Facsimile:  1.800.408.1501
kimberly@fordumas.com

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust.  Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT (CIP)
## 11th Cir. R. 26.1-1

Alabama State Bar

Alexander, Hon.Joel T., Chief Administrative Judge

Board of Professional Responsibility of the Supreme Court of Tennessee

Bondi, Pamela Bondi, U.S.Attorney General

Bourque, Pamela

Brackins El Private Estate Trust

Burke, Hon. Liles C.

DeCaesaris, Paula

El, Randy Brackins

Ford, Esq. Kimberly A.

Fordumas LLC

Hall, Hon. Ruth Ann

Huddleston, Sherry

Internal Revenue Service

Jones, Justin - Alabama State Bar

Kiel, Esq., Kristin Pollard

Mack, Larry

Merit Systems Protection Board, Atlanta Regional Office

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust.  Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.

Morgan County, Alabama Sheriff's Office

Morton, Phillip Jeff

Mosby, Dwight

National Aeronautical and Space Administration (NASA)
Attn:  Office of the General Counsel

NASA Marshall Space Flight Center (MSFC)
Attn:  Center Director and the Office of the General

Proctor, Hon. R. David

Rhodes, Stanley

Sprague, Hon.Christopher G., Administrative Judge

Stewart, Wendell Scott

Tant-Shafer, Tiffany D. - Board of Professional Responsibility, Tennessee

United States Department of Justice

United States Marshall Service, Northern District of Alabama

United States Office of Special Counsel

United States Department of the Treasury

White, Craig

White, Esq.,  John K.


     No publicly traded company or corporation has an interest in the outcome of this case.

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust.  Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.

Respectfully submitted on this the 7th day of February, 2026,

*/s/ Kimberly A. Ford*
Kimberly A Ford, Esq. (FOR063)
Counsel for Randy Brackins El
Fordumas LLC
Law, Consulting and Mediation Firm
470 Providence Main, Suite 302C
Huntsville, AL 35806
Ofc: 256.886.6240
Facsimile: 1.800.408.1501
kimberly@fordumas.com

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust.  Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.

## NOTICE OF EX PARTE PRIVATE TRUST MATTER

This record is entered for evidentiary and notice purposes only. Nothing herein shall be construed as a voluntary submission to jurisdiction or public adjudication. Entry into the record does not waive any rights, remedies, or private status.

This documents is being recorded on the public record for the sole purpose of giving constructive notice of the existence of a private trust. This document, its terms, and its parties remain private, non-public, and are not submitted for adjudication or administrative review. All rights reserved, none waived. Recording of this document does not constitute a waiver of privacy, ownership, or trustee discretion, and does not confer jurisdiction or authority to any public agency, officer, or court to modify, interpret, or intervene in the private affairs of the trust. This record is evidence of status only.

**This document is protected under the principles of private contract, Article I Section 10 of the United States Constitution, and applicable trust law. No part of this instrument may be construed to place the trust corpus, affairs, or administration under public authority."Equity regards the beneficiary as the true owner."**

- "Equity imputes intention to fulfill obligation."
- "Equity looks to substance, not form."
- "Trust follows the law, but equity governs the duty."
- "Where equity is equal to the law, equity shall prevail."
- "Equity acts in personam, not in rem."

## NOTICE TO CLERK:

This filing is not adversarial. No joinder is granted. This instrument is a private equity record and must be docketed pursuant to The Federal Rules of Civil Procedure 5(d)(4) and Alabama Rules of Civil Procedure 5. The Court and its clerks act ministerially under notice of trust possession. Any further statutory interpretation or adversarial designation is hereby rebutted by trust record.

*/s/ Beneficiary*

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust. Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.                    2

## Notice and Command to Clerk of Court

Let this Notice be entered as formal and final command to the Clerk of Court to seal the Equity Docket pertaining to the Brackins El Private Estate Trust.

All filings have been duly and lawfully entered under private trust jurisdiction. The forum has been noticed, fiduciary breaches declared, dishonors recorded, and equity affirmed. The Office of the Beneficiary now issues this lawful demand for ministerial compliance by the Clerk:

• To seal the record,

• To protect the corpus, and

• To conclude the matter in accordance with law, duty, and equity.

Authority and Legal Foundation

• Ministerial Duty Under FRCP 5(d)(4) and ARCP 5, the Clerk may not refuse filings for form alone and must execute non-discretionary ministerial duties. Failure to comply constitutes breach and

administrative dishonor, enforceable by surcharge and **nunc pro tunc correction.**

• Administrative Doctrine Pursuant to IRS Manual §21.7.13.3.2.1, only the Beneficiary lawfully appointed possesses final ledger and accounting authority. Further, IRS Manual §4.25.6.1 mandates full accounting upon fiduciary failure.

## Equity Jurisprudence

• Pomeroy §§395, 818 affirms closure of equity record in favor of the trust upon fiduciary failure.

• Blackstone, Book III, Ch. 23 establishes private rights restored upon judicial default.

• Lewin §935 confirms fiduciary silence or neglect closes the record to equity in favor of the trust.

## Maxims of Equity

• Equity delights in the end of litigation.

• Where the duty is ministerial, the act is mandatory.

• The record speaks for itself and binds the conscience of the court.

Final Admonition

• The Clerk is hereby warned: Any refusal to seal constitutes
ministerial breach and unauthorized tampering with a private trust
corpus. Such refusal will trigger notice of ministerial default and
liability by surcharge.

• "For by thy words thou shalt be justified, and by thy words thou shalt
be condemned." Matthew 12:37

Issued under Seal and Authority of the Beneficiary, Brackins El Private
Estate Trust

"Pursuant to IRS Manual §21.7.13.3.2.1, IRS protocol requires
recognition of the duly appointed Beneficiary as the party authorized to
file and account on behalf of the estate. Likewise, IRS Manual §4.25.6.1
instructs examiners to demand full accounting where fiduciary failure
occurs. These administrative protocols parallel and reinforce equity's
own requirement that fiduciaries be held to full accounting."

Dated:  February 7, 2026

## <u>EX PARTE EMERGENCY SUPPLEMENTAL NOTICE - UNLAWFUL DETENTION AND SHACKLING OF FIDUCIARY COUNSEL</u>

**COMES NOW** Petitioner, Brackins El Private Estate Trust, by and through undersigned fiduciary counsel and TTEE, and respectfully submits this **Ex Parte Supplemental Emergency Notice** documenting **new, ongoing constitutional violations** perpetrated by **United States District Judge Liles C. Burke** and federal officers acting under color of his authority.

This supplement arises from events occurring **February 6, 2026**, after the filing of the principal mandamus petition in this docket, and demonstrates the urgent, irreparable nature of the relief sought.

## I. JURISDICTIONAL STATEMENT

This Court has **mandamus jurisdiction** under **28 U.S.C. § 1651(a)** (the All Writs Act) and **FRAP Rule 21**. The All Writs Act authorizes this Court to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[]."justice+3

**Mandamus is appropriate where:**

1. **A district court has clearly exceeded its jurisdiction or usurped judicial power;**[justice]

2. **No other adequate remedy exists;** and

3. **The petitioner will suffer irreparable harm absent immediate relief.**

All three elements are met here. Judge Burke exercised contempt authority **after case termination**, targeted fiduciary counsel in **retaliation for protected advocacy**, and caused **immediate, irreparable injury** to counsel's liberty, professional standing, and ability to serve the Trust.

This Court also has **original mandamus jurisdiction** to protect the integrity of proceedings **currently pending before it** (this mandamus docket 25-14521) from interference by the district court.[justice]

## II. FACTUAL BACKGROUND- UNLAWFUL DETENTION OF ATTORNEY KIMBERLY FORD

### A. Case Closure and Loss of Jurisdiction

On **January 23, 2026**, the Clerk of Court for the Northern District of Alabama **marked Case No. 5:25-cv-01568-LCB as "CLOSED"** in the CM/ECF docket system. *(Exhibit A - Docket Printout)*

The consolidated matters (5:25-cv-01600, 5:25-cv-01607, 5:25-cv-01685) were likewise terminated or administratively closed without pending motions, active contempt proceedings, or reservation of jurisdiction.

**Upon closure of a civil case, absent express reservation or ancillary proceedings properly initiated, the district court loses subject-matter jurisdiction to enter new orders or enforce prior orders through contempt. "A motion must be addressed to a pending action... and a court lacks jurisdiction**

to entertain a motion after the action has been 'unequivocally terminated.'" *Riccio v. Kukaj*, 2023 NY Slip Op 04785 (2d Dept. Sept. 27, 2023). [newyorkappellatedigest]  While this is a New York state court case, the principle applies universally: **subject-matter jurisdiction cannot be manufactured after termination.**

According to C.J.S. Federal Courts, "[f]ederal district courts have no jurisdiction except that conferred by the Constitution and acts of Congress.

- Their jurisdiction is not to be presumed and must affirmatively appear on the record in any proceeding.

- When jurisdiction has been withdrawn by Congress (for example, when a case is closed and there is no pending matter), the court has no authority to act further in that cause.

Furthermore, the district courts of the United States possess only that jurisdiction expressly conferred by Constitution and statute, and no presumption of jurisdiction arises in their favor. Orders entered without such jurisdiction are void and may be attacked at any time, as reflected in C.J.S. Federal Courts, Judgments, and Contempt.

## B. Purported Civil Contempt Without Jurisdictional Foundation

On or about **February 6, 2026**, **Attorney Kimberly Adina Ford** (Alabama State Bar No. ASB-4139-80f; Tennessee Bar No. 026826; fiduciary counsel and

TTEE to the Brackins El Private Estate Trust) was **detained by federal officers** pursuant to an alleged **civil contempt order** issued by Judge Burke. **There was no lawful nor legal written contempt order which appeared on the docket** *(Exhibit A)* due to docket closure, lack of subject matter jurisdiction, on a void case, and remand to state. Therefore, no legal nor lawful **show-cause hearing was held.** *(Exhibit B - Attorney Ford Affidavit)* Furthermore, there was **no opportunity to cure or purge was provided before detention.** *(Id.),* rendering the proceeding void abinitio.

## C. Shackling and Humiliation

Attorney Ford was **shackled at the waist, wrists and ankles** by federal marshalls and **detained in restraints for several hours**. A Morgan County deputy **photographed Attorney Ford while in shackles**, at her request, and then, later shared the photograph with her. . *(Exhibit B - Attorney Ford Affidavit, ¶12)*. These actions create the inference of: (1). Unlawful detention; (2) ultra vires acts; (3) evasion of lawful and legal procedures; and (4) unlawful arrest.

Under the Fourth Amendment, any physical detention of a person by government officers, including custody labeled as "civil contempt," is a seizure that must be supported by probable cause and by a valid exercise of judicial power. Here there was no criminal charge, no pending or adjudicated civil contempt proceeding in a case within Judge Burke's jurisdiction, no warrant, and no specific

facts that could make a reasonable officer believe Attorney Ford had committed any offense. The only predicate for her arrest and shackling was her refusal to acquiesce to a void order and her continued protected advocacy in the Eleventh Circuit and before the MSPB. A contempt label cannot manufacture probable cause where the underlying order is jurisdictionally void, and the seizure of counsel on that basis falls squarely within the category of unreasonable seizures that the Fourth Amendment forbids.

This conduct:

- **Violated the Eighth Amendment's prohibition on cruel and unusual punishment;**

- **Violated substantive due process** by imposing punitive, humiliating restraint on a **nonviolent civil contemnor**;

- **Constituted harassment and retaliation** under the **Code of Conduct for United States Judges, Canon 2**; and uscourts+1

- **Created evidence of intent** to intimidate, embarrass, and deter Attorney Ford from representing the Trust in federal proceedings.

## D. Temporal and Causal Link to Protected Advocacy

Attorney Ford's detention occurred **within 8 hours** of filing:

- The **principal Writ of Mandamus and Prohibition** in this docket (25-14521);

- **Supplemental notices** in the MSPB appeal (AT-1221-26-0143-W-1) challenging Judge Burke's interference with parallel federal proceedings; and

- **Motions to disqualify Judge Burke** based on extrajudicial bias and retaliatory conduct.

The timing is not coincidental. It is retaliatory.

## III. LEGAL VIOLATIONS

### A. 18 U.S.C. § 242 - Deprivation of Rights Under Color of Law

**18 U.S.C. § 242** makes it a federal crime for anyone acting under color of law to **willfully deprive a person of constitutional rights**.

**Elements:**

1. **Actor under color of law** (federal judge, marshals);

2. **Willful deprivation** of constitutional rights;

3. **Clearly established rights** at time of violation.

**Application:**

- Judge Burke **issued a contempt order (or directed marshals to detain) after his jurisdiction terminated**, acting ultra vires.

- The **right to be free from detention without due process** and **without valid judicial authority** is clearly established.

- The **right to zealous representation without retaliation** is protected by the **First Amendment** and **attorney work-product and ethical advocacy privileges**.

  **If no valid order existed, the detention was unlawful seizure.** If an order existed, but was void for lack of jurisdiction, it cannot support lawful detention.

## B. First Amendment - Retaliation for Protected Advocacy Standard:

**"Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right."** *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

**Elements of First Amendment retaliation claim:**

1. **Protected activity** (filings, motions, advocacy on behalf of client);

2. **Adverse action** (arrest, detention, shackling, threats to licensure);

3. **Causal connection** (temporal proximity, absence of other justification).

## Application:

- Attorney Ford engaged in **constitutionally protected advocacy**: filing mandamus petitions, objecting to jurisdiction, asserting trust defenses.

- Judge Burke's **civil contempt order** (if it exists) and the **physical detention and shackling** constitute **severe adverse actions** that would **chill a reasonable attorney** from continuing representation.

- **Causation is evident:** The detention occurred **immediately after filings challenging Judge Burke's authority** and **within the active mandamus docket before this Court**.

**Judicial retaliation violates Canon 2 of the Code of Conduct:**uscourts+1

"A judge should not engage in any form of harassment... A judge should not retaliate against those who report misconduct." Code of Conduct for United States Judges, Canon 2, Commentary.[uscourts]

## C. Fourth Amendment - Unlawful Seizure Without Probable Cause

**Standard:**

"[A]ll arrests... must be supported by probable cause." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).    **Civil contempt detention is still a "seizure"** requiring lawful authority and due process.law.cornell+1

**Application:**

- **No criminal offense** was alleged or existed.

- **No valid civil contempt order** existed in a case with ongoing jurisdiction.

- **No warrant** was issued.

- **No probable cause** supported detention for anything other than **retaliation disguised as contempt**.

**The Fourth Amendment prohibits pretextual seizures.**

## D. Eighth Amendment/Substantive Due Process - Excessive and Punitive Restraint

**Standard:**

**"Civil contempt sanctions... must be designed to compel compliance, not to punish."** *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827-28 (1994). **"Punitive" measures (fixed sentences, shackling without security justification) transform civil contempt into criminal punishment**, triggering full criminal due process protections.[law.cornell]

**Application:**

- Attorney Ford is a **licensed professional, nonviolent, and posed no flight risk**.
- **Shackling at waist and wrists** is **excessive and humiliating** for a civil contemnor.
- **No "key to the jail"** was provided (no articulated action to purge contempt).

**This was punishment, not coercion. It violates the Eighth Amendment and substantive due process.**

**E. Due Process - Lack of Notice, Hearing, or Valid Order**

**Standard:**

**"Due process requires notice and an opportunity to be heard before deprivation of liberty."** *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

**For civil contempt:**

1. **Notice of the specific conduct** constituting contempt;

2. **Opportunity to respond** or cure;

3. **Hearing** (except for direct, in-court contempt);

4. **Written order** specifying findings, sanctions, and purge conditions.

   [peoples-law]

**Application:**

- **No written order on the docket.**

- **No show-cause notice.**

- **No hearing.**

- **No purge conditions articulated before detention.**

**This violated procedural due process.**

**F. Jurisdictional Abuse - Contempt After Case Closure**

**Standard:**

"**A court generally loses jurisdiction to act after a case is closed, absent express reservation or ancillary proceedings properly initiated.**"

**Application:**

- Case **5:25-cv-01568-LCB** was **marked "CLOSED" on January 23, 2026**.

- **No ancillary contempt proceeding** was initiated by separate motion or order reopening the case.

- **Civil contempt cannot be enforced in a terminated case** without subject-matter jurisdiction.newyorkappellatedigest+1

**Judge Burke acted ultra vires.**

**G. Judicial Misconduct - Canon 2 Violations**

**28 U.S.C. § 351(a)** authorizes complaints alleging **"conduct prejudicial to the effective and expeditious administration of the business of the courts."**ca11.uscourts+1

**Judicial Conduct Rule 2(g)** defines misconduct to include:[ca11.uscourts]

**"(G) retaliating against complainants, witnesses, or others for their participation in... [judicial proceedings]."**[ca11.uscourts]

**Code of Conduct, Canon 2:**uscourts+1

**"A judge should not retaliate, directly or indirectly, against a person known or suspected to have... participated in the investigation of a judge."**

**Application:**

- Attorney Ford **filed mandamus petitions** and **judicial-conduct complaints** against Judge Burke.

- Judge Burke **retaliated by issuing a void contempt order** and **ordering her detention and shackling**.

- This **chills future litigants and counsel** from challenging judicial overreach.

**This is cognizable misconduct under 28 U.S.C. § 351 and warrants immediate referral to the Judicial Council.**uscourts+1

## IV. EQUITABLE Principals and Maxims

1. Equity will not suffer a wrong to be without a remedy.

- Unlawful seizure of counsel, coercive "compliance" signature, and retaliation for protected filings are classic "wrongs" in equity. This maxim justifies extraordinary relief (mandamus, prohibition, injunctive orders) when ordinary appeal is inadequate.

2. Equity acts in personam.

- Here, Burke, MSPB officials, NASA and DOJ actors are trustees de son tort and federal officers exceeding lawful authority.

3. *Nemo judex in causa sua* - no one should be judge in his own cause.

- Burke is retaliating against Attorney Ford who filed a mandamus and misconduct allegations about him in the Eleventh Circuit. Using contempt and forced "certificates of compliance" to punish Attorney Ford.

4. No man may take advantage of his own wrong.

- Here, Burke issued void orders in closed cases, then used non-compliance with those orders as the predicate for arrest and shackling. Equity treats any benefit from that void act by (silencing Counsel, chilling filings, discrediting counsel) as illegitimate.

5.  Equity regards as done that which ought to be done.

• The record reflects that the Trust has already filed for protection, mandamus, and Rule Nisi before this seizure. Equity treats those protection requests as if the system had acted when it should have. Therefore, this tribunal  was on NOTICE:  and failed to protect us Attorney Ford and Appellant from  MSPB, DOJ, NASA  administrative failures and evasions.

6.  Equity abhors forfeitures and penalties.

• Shackling Attorney Ford and threatening her practice, where there is no valid criminal charge, no live jurisdiction, and the only "offense" is protected litigation, is the kind of punitive forfeiture (of liberty and professional status) equity is designed to stop.

7.  Equity follows the law.

•  Accordingly, Fourth, Fifth and Fourteenth Amendments and judicial-conduct canons, are the "law" that equity follows,: once the constitutional and statutory limits are breached, equity must intervene.

## **GOVERNING MAXIM**

• Therefore, whenever there is a variance in Equity and Law, Equity **SHALL** Prevail.

## **IV. THE TRUST DEMANDS**

## A.  **Issue Writ of Mandamus**

1. Directing the National Aeronautics and Space Administration, through the Merit Systems Protection Board proceedings now before this Court, to restore Petitioner to his prior or equivalent federal position, with full back pay, benefits, service credit, seniority, and expungement of all retaliatory or void removal records, as a necessary remedial consequence of the unlawful termination and constitutional violations established in this record.

2. That Attorney Kimberly A. Ford's professional standing be fully restored by recognizing that any purported contempt, adverse inference, or professional stigma arising from Judge Burke's ultra vires orders is null and void, and that no court, agency, or bar authority may rely on those acts to impair her license, reputation, or ability to serve as fiduciary counsel to the Brackins El Private Estate Trust, while expressly reserving all rights to seek full damages and equitable relief for this irreparable harm in an appropriate civil action in the United States District Court.

3. **Directing Judge Burke to vacate any and all contempt orders** against Attorney Kimberly Ford arising from cases 5:25-cv-01568, 5:25-cv-01600, 5:25-cv-01607, and 5:25-cv-01685;

4. **Ordering the immediate return** of any photographs, booking records, or custodial documents created during Attorney Ford's unlawful detention;

5. **Directing Judge Burke to cease all retaliatory conduct** toward Petitioner, Petitioner's counsel, and all parties associated with the Brackins El Private Estate Trust;

6. **Compelling Judge Burke to certify** that he has no continuing jurisdiction over the closed cases and that Attorney Ford is free from all contempt sanctions.

## B. Issue Writ of Prohibition

1. **Prohibiting Judge Burke from presiding over, entering orders in, or exercising any authority** related to:

- The Brackins El Private Estate Trust,

- Attorney Kimberly Adina Ford (personally or professionally),

- Any case, motion, or proceeding involving Randy El, Randy Brackins El, or the Trust beneficiary,

- Any attempt to interfere with Attorney Ford's licensure, bar standing, or professional reputation.

## C. Judicial Conduct Referral

1. **Referring Judge Burke to the Judicial Council of the Eleventh Circuit** under **28 U.S.C. § 351** for formal investigation of:[ca11.uscourts+1](ca11.uscourts+1)

- Retaliation against counsel for protected advocacy;

- Ultra vires exercise of contempt authority after case termination;

- Violations of Canon 2 of the Code of Conduct for United States Judges;

- Abuse of judicial office to chill federal litigation and mandamus petitions.

## D. Preservation of Civil Rights Claims

1.   **Declaring and preserving** Petitioner's and Attorney Ford's rights to pursue:

- **Bivens claims** against Judge Burke (to the extent qualified immunity does not bar relief);

- **42 U.S.C. § 1983 claims** against deputy marshals and non-judicial actors;

- **42 U.S.C. § 1985/1986 conspiracy claims** if coordination with bar authorities or other actors is established;

- **Declaratory and injunctive relief** in separate civil-rights actions.

## E. Immediate Stay

- **Staying all further proceedings** in the Northern District of Alabama involving Petitioner, the Trust, or Attorney Ford until this mandamus petition is resolved.

## V. CONCLUSION

This is not civil contempt. **This is constitutional collapse.**  A federal judge, **after his jurisdiction terminated**, **ordered the detention and shackling of fiduciary counsel** for the "offense" of **zealously representing a client** and **challenging judicial overreach**.  This Court is the last institutional safeguard.

**Mandamus is not discretionary here; it is ministerial.** Judge Burke has **usurped**

**authority**, **violated fundamental rights**, and **undermined the integrity of federal adjudication**.

Respectfully submitted this 7th day of February, 2026.  I declare under penalty of perjury that the foregoing is true and correct. Executed on February 7, 2026 at Huntsville, Alabama.

**By:** /s/ Executor, Brackins El Private Estate Trust
**Executor, Brackins El Private Estate Trust**
Brackins El Private Estate Trust
6675 County Road 2023
Danville, AL 35619

This communication is submitted strictly from the Office of Fiduciary Counsel on behalf of the Brackins El Private Estate Trust and is not, nor shall it be construed as, consent to joinder, suretyship, or appearance on behalf of any artificial person, legal fiction, or U.S. citizen designation. All rights are reserved under equitable jurisdiction, and the undersigned operates solely in her capacity as Fiduciary Counsel to the Trust, under the express authority of the Executor and in protection of the Res.

Pursuant to UCC §1-308, all rights and remedies are expressly reserved without prejudice. No statements herein shall be deemed a waiver of Trust separation, nor construed as a submission to any foreign or statutory jurisdiction. The Brackins El Trust is a private estate existing in equity, and all parties are hereby noticed that any presumption of agency, joinder, or citizenship-based authority is expressly rebutted nunc pro tunc to original formation.

*/s/ Kimberly A. Ford*
Kimberly A. Ford
Attorney for Petitioner
Alabama State Bar No. ASB-4139+80f
Tennessee Bar No. 026826

FORDUMAS LLC
*Law, Consulting and Mediation Firm*
470 Providence Main, Suite 302C
Huntsville, AL 35806
Ofc: 256.886.6240
Facsimile: 1-800-408-1501
kimberly@fordumas.com

## CERTIFICATE OF COMPLIANCE

### (based on FRAP 32(g), 32(a)(7), and 11th Cir. Rule 32-4)

`I certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1). This petition contains 22 pages, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f).

This notice has been prepared using Apple Pages in a proportionally spaced typeface using Times New Roman 14-point font.

## CERTIFICATE OF SERVICE

I do hereby certified that I have served a copy of the foregoing on all interested parties via the electronic filing system, by email or first class, certified mail return receipt:

Attn: Pamela Bondi, U.S.Attorney General
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

United States Department of Justice
United State's Attorney's Office, Northern District of Alabama

Filed and preserved under the Doctrine of Cy-près and the ministerial mandates of FRCP 5 and ARCP 5 for the continuing equitable record of the Brackins El Private Estate Trust. Filed and lodged by the Office of the Beneficiary in private-trust capacity. Silence of noticed fiduciaries constitutes continuing breach; Trust silence is not consent. Equity perfected; jurisdiction in conscience only.                23

1801 Fourth Avenue North
Birmingham, Alabama 35203

United States Office of Special Counsel
Attn:  Paul Ingrassia, Special Counsel
1730 M Street NW, Suite 218
Washington, DC 20036-4505

United States Marshals Service, Northern District of Alabama
Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

Greer M. Lynch, Clerk of Court
U.S. District Court, Northern District of Alabama
1729 5th Avenue North
Birmingham, AL 35203

Internal Revenue Service (IRS)
Attn:  Scott Bessent, Acting Commissioner
1111 Constitution Avenue, NW
Washington, DC. 20224

United States Department of the Treasury
Attn:  Office of the General Counsel
1500 Pennsylvania Avenue, NW
Washington, DC 20220

National Aeronautical and Space Administration (NASA)
Attn:  Office of the General Counsel
300 E Street SW, Suite 0V30
Washington, DC 20546

NASA Marshall Space Flight Center (MSFC)
Attn:  John Pelfry, Center Director and the Office of the General Counsel
Mail Code LS01
Huntsville, AL 35812

John K. White
3700 Governor's Drive NW, Unit 213
Huntsville, AL 35805-3561

Paula DeCaesaris
2890 High Mountain Road, NE
Huntsville, AL 35811

Larry Mack
143 Fernbridge Blvd.
Madison, AL 35758-7556

Pamela Bourque
155 Intercostal Dr.
Madison, AL 35758-9425

Phillip Jeff Morton
1260 Balch Road, Apt. 3202
Madison, AL 35757-6396

Paul R. Sullivan
2211 Cedar Cove Ct.
Reston, VA 20191-4108

Wendell Scott Stewart
244 Rosecliff Drive
Harvest, AL 35749

Stanley Rhodes
133 Vaughnwood Trace
Huntsville, AL 35806-4085

Sherry Huddleston
136 Jay Crawford Rd.
Baileyton, AL 35019

Dwight Mosby
26 Wax Lane SW

Huntsville, AL 35824

Kristin Pollard Kiel
19 America Way SW
Huntsville, AL 35824

Hon. Ruth Ann Hall
XXXX
XXXXXXX

Hon. Liles C. Burke
XXXXXXX
XXXXXXXX

Hon. R. David Proctor
XXXXXXXX
XXXXXXXX

Merit Systems Protection Board
Atlanta Regional Office
401 W. Peachtree St., NW, 10th Floor
Atlanta, GA 30308-3519

Alexander, Hon. Joel T.
XXXX
XXXXXXX

Sprague, Hon.Christopher G.
XXXXX
XXXXX

On this the 7th day of February, 2026.

*/s/ Kimberly A. Ford*

**5:25-cv-01568-LCB** Brackins El Private Estate, The v. White et al
Liles C Burke, presiding
**Date filed:** 09/12/2025
**Date terminated:** 01/23/2026
**Date of last filing:** 02/06/2026

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed & Entered:* | 09/12/2025 | Notice of Removal |
| | *Docket Text:* NOTICE OF REMOVAL by Craig White, Paula DeCesaris, Stanley Rhodes from Circuit Court of Madison County Alabama, case number 47-cv-2025-901619 filed by Craig White, Paula DeCesaris, Stanley Rhodes. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E, # (6) Civil Cover Sheet)(AHI) | | |
| 2 | *Filed & Entered:* | 09/12/2025 | Uniform Initial Order |
| | *Docket Text:* **ALND UNIFORM INITIAL ORDER GOVERNING ALL FURTHER PROCEEDINGS** - with appendices attached. Signed by Judge Liles C Burke on 9/12/2025. (AHI) | | |
| 3 | *Filed & Entered:* | 09/12/2025 | Notice (Other) |
| | *Docket Text:* NOTICE by Brackins El Private Estate, The *Executed Ex-Parte Notice of Federal Court Record - Recognition of the Trust & Response to Westfall Certification* (Ford, Kimberly) | | |
| 4 | *Filed & Entered:* | 09/14/2025 | Notice (Other) |
| | *Docket Text:* NOTICE by Brackins El Private Estate, The *Ex-Parte Notice of Criminal Exposure, Fiduciary Breach, & Equity Enforcement.9.14.25* (Ford, Kimberly) | | |
| 5 | *Filed & Entered:* | 09/16/2025 | Notice (Other) |
| | *Docket Text:* NOTICE by Brackins El Private Estate, The re [4] Notice (Other), [1] Notice of Removal, [2] Uniform Initial Order, [3] Notice (Other) *EX-Parte Notice of Rule 11 Liability, Fiduciary Breach, Fraud Upon the Court and Final Demand for Full Accounting and Title Restoration* (Ford, Kimberly) | | |
| 6 | *Filed & Entered:*<br>*Terminated:* | 09/17/2025<br>01/23/2026 | Motion to Substitute Party |
| | *Docket Text:* MOTION to Substitute Party by Paula DeCesaris, Stanley Rhodes, Craig White. (LaGanke, Alex) | | |
| 7 | *Filed & Entered:* | 09/17/2025 | Notice (Other) |
| | *Docket Text:* NOTICE by Brackins El Private Estate, The *Ex-Parte Notice of Challenge to Substitution, Demand for Objections and Demand for Sanctions* (Ford, Kimberly) | | |
| 8 | *Filed & Entered:* | 09/18/2025 | Order |
| | *Docket Text:* TEXT ORDER: An In Person Status Conference is set for 10:30 AM on Tuesday, 9/23/2025, in the Federal Courthouse, 660 Gallatin Street SW, Courtroom II, Huntsville, AL before Judge Liles C Burke. Signed by Judge Liles C Burke on 9/18/25. (SPT ) | | |

**Exhibit A**

| 9 | *Filed & Entered:* | | 09/18/2025 | Notice (Other) |
|---|---|---|---|---|

*Docket Text:* NOTICE by Brackins El Private Estate, The (Ford, Kimberly)

| | *Filed & Entered:* | | 09/19/2025 | Telephone Conference |
|---|---|---|---|---|

*Docket Text:* Minute Entry for proceedings held before Judge Liles C Burke: Telephone Conference held on 9/19/2025; Alex LaGanke present for Dfts; Counsel for Plaintiff not present. (Court Reporter Christina Decker.) (SPT )

| 10 | *Filed & Entered:* | 09/19/2025 | Order |
|---|---|---|---|

*Docket Text:* TEXT ORDER: A Telephone Conference is set for 1:30 PM on Friday, 9/19/2025; dial in information will be emailed to counsel; **Counsel For All Parties are ORDERED to Appear on This Call**. Signed by Judge Liles C Burke on 9/19/25. (SPT )

| 11 | *Filed & Entered:* | 09/19/2025 | Order |
|---|---|---|---|

*Docket Text:* TEXT ORDER. Today around 11:51 a.m., an individual purporting to be from Attorney Kimberly Ford's office called the Clerk of Court and reported that Ms. Ford was out of state and would not be on the telephone conference scheduled for today at 1:30 p.m. However, this is an improper communication, which all parties in this matter were not privy to. Additionally, this Court is aware that telephone service exists in all 50 states and has for some time. Again, this Court notes that **Ms. Ford is ORDERED to be on the telephone conference today at 1:30 p.m.** This is an important matter. Signed by Judge Liles C Burke on 9/19/2025. (CRH)

| 12 | *Filed & Entered:* | | 09/19/2025 | Notice (Other) |
|---|---|---|---|---|

*Docket Text:* NOTICE by Brackins El Private Estate, The *Ex-Parte Notice of Non-Appearance* (Ford, Kimberly)

| 13 | *Filed & Entered:* | 09/19/2025 | Order |
|---|---|---|---|

*Docket Text:* TEXT ORDER: The Telephone Conference is **RESET** for 9:30 AM on Monday, 9/22/25; Ms. Ford and counsel for all parties are once again **ORDERED** to participate in this call; Ms. Ford is **HEREBY ORDERED** to provide this Court, by 5:00 PM today, 9/19/25, with the following: 1. The complete name and assigned case number of Tyrone Bledsoe v. Truist Bank; AND 2. The name of the judge presiding over Tyrone Bledsoe v. Truist Bank; AND 3. The phone number of the judge presiding over Tyrone Bledsoe v. Truist Bank; AND 4. A PDF copy of the Order setting the conflicting hearing in Tyrone Bledsoe v. Truist Bank. Signed by Judge Liles C Burke on 9/19/25. (SPT )

| 14 | *Filed & Entered:* | 09/19/2025 | Motion to Consolidate Cases |
|---|---|---|---|
| | *Terminated:* | 09/19/2025 | |

*Docket Text:* MOTION to Consolidate Cases by Paula DeCesaris, Stanley Rhodes, Craig White. (LaGanke, Alex)

| 15 | *Filed & Entered:* | | 09/19/2025 | Order on Motion to Consolidate Cases |
|---|---|---|---|---|

*Docket Text:* TEXT ORDER granting [14] Motion to Consolidate Cases. The motion to Consolidate filed by the Defendants herein is granted. Signed by Judge Liles C Burke on 09/19/2025. (LCB)

| 16 | *Filed & Entered:* | | 09/19/2025 | Notice (Other) |
|---|---|---|---|---|

*Docket Text:* NOTICE by Brackins El Private Estate, The *Ex-Parte Notice of Removal to the Alabama Supreme Court* (Ford, Kimberly)

| | *Filed & Entered:* | | 09/22/2025 | Telephone Conference |
|---|---|---|---|---|

*Docket Text:* Minute Entry for proceedings held before Judge Liles C Burke: Telephone Conference held on 9/22/2025; Alex LaGanke present for dfts; Counsel for Plaintiff did not appear. (Court Reporter Christina Decker.) (SPT )

| 17 | *Filed & Entered:* | | 09/22/2025 | Notice (Other) |
|----|--------------------|--|-----------|----------------|

*Docket Text:* Letter to Court regarding case from Attorney Ford (AHI)

| 18 | *Filed & Entered:* | 09/22/2025 | Notice (Other) |
|----|--------------------|-----------|----------------|

*Docket Text:* NOTICE by Paula DeCesaris, Stanley Rhodes, Craig White (Attachments: # (1) Exhibit A - Email from Plaintiff to Defendant's Counsel)(LaGanke, Alex)

| 19 | *Filed & Entered:* | 09/22/2025 | Order |
|----|--------------------|-----------|-------|

*Docket Text:* ORDER: Ms. Ford is yet again ORDERED to provide to this Court, by **5:00 p.m. today, September 22, 2025** the following information: 1. The complete name and assigned case number of Tyrone Bledsoe v. Truist Bank; 2. The name of the judge presiding over Tyrone Bledsoe v. Truist Bank; 3. The phone number of the judge presiding over Tyrone Bledsoe v. Truist Bank; AND 4. A PDF copy of the Order setting a hearing for Tuesday, September 23, 2025 at 9:00 a.m. in Tyrone Bledsoe v. Truist Bank. Signed by Judge Liles C Burke on 9/22/2025. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-HNJ(AHI)

| | *Filed & Entered:* | 09/23/2025 | Status Conference |
|--|--------------------|-----------|-------------------|

*Docket Text:* Minute Entry for proceedings held before Judge Liles C Burke: In PersonStatus Conference held on 9/23/2025; Alex LaGanke present for dfts; Counsel for Plaintiff did not appear. (Court Reporter Christina Decker.) Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-HNJ(SPT)

| 20 | *Filed & Entered:* | 09/23/2025 | Notice (Other) |
|----|--------------------|-----------|----------------|

*Docket Text:* NOTICE by Paula DeCesaris, Stanley Rhodes, Craig White, Ann Allen, Scott Bessent, Pamela Bondi, Pam Bourque, Sherry Huddleston, Paul Ingrassia, Kristin Pollard Kiel, Phillip Jeff Morton, Dwight Mosby, Joseph Pelfrey, Wendell Scott Stewart, Paul R Sullivan, John White, Larry K Mack, Paul Sullivan (Attachments: # (1) Exhibit A - Sep. 22, 2025 Email, # (2) Exhibit B - Email Attachment)Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-HNJ(LaGanke, Alex)

| 21 | *Filed & Entered:*<br>*Terminated:* | 09/26/2025<br>01/23/2026 | Motion to Dismiss |
|----|-------------------------------------|--------------------------|-------------------|

*Docket Text: MOTION TO DISMISS/* and ANSWER to Complaint by Paula DeCesaris, Stanley Rhodes, Craig White, Ann Allen, Scott Bessent, Pamela Bondi, Pam Bourque, Sherry Huddleston, Paul Ingrassia, Kristin Pollard Kiel, Phillip Jeff Morton, Dwight Mosby, Joseph Pelfrey, Wendell Scott Stewart, Paul R Sullivan, John White, Larry K Mack, Paul Sullivan. (Attachments: # (1) Exhibit 1 - Agency Declaration, # (2) Attachment A to Agency Decl. (Aug. 4 Email), # (3) Attachment B to Agency Decl. (Aug. 25 Email), # (4) Attachment C to Agency Decl. (Plaintiff Emails to Agency Employees))Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB(LaGanke, Alex) Modified on 9/29/2025 (AHI).

| 22 | *Filed & Entered:*<br>*Terminated:* | 09/26/2025<br>01/23/2026 | Motion for Miscellaneous Relief |
|----|-------------------------------------|--------------------------|--------------------------------|

*Docket Text:* MOTION to Enjoin by Paula DeCesaris, Stanley Rhodes, Craig White, Ann Allen, Scott Bessent, Pamela Bondi, Pam Bourque, Sherry Huddleston, Paul Ingrassia, Kristin Pollard Kiel, Phillip

Jeff Morton, Dwight Mosby, Joseph Pelfrey, Wendell Scott Stewart, Paul R Sullivan, John White, Larry K Mack, Paul Sullivan. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB(LaGanke, Alex)

| 23 | *Filed & Entered:* | 10/03/2025 | Notice (Other) |
|----|----|----|----|

*Docket Text:* NOTICE of Communication by Paula DeCesaris, Stanley Rhodes, Craig White, Ann Allen, Scott Bessent, Pamela Bondi, Pam Bourque, Sherry Huddleston, Paul Ingrassia, Kristin Pollard Kiel, Phillip Jeff Morton, Dwight Mosby, Joseph Pelfrey, Wendell Scott Stewart, Paul R Sullivan, John White, Larry K Mack, Paul Sullivan (Attachments: # (1) Exhibit A - Oct. 1, 2025 Email from Plaintiff's Counsel, # (2) Exhibit B - Oct. 2, 2025 Email from Plaintiff's Counsel)Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB(LaGanke, Alex) Modified on 10/6/2025 (AHI).

| 24 | *Filed & Entered:* | 10/06/2025 | Notice (Other) |
|----|----|----|----|

*Docket Text:* NOTICE, Declaration and Demand for Remand for Lack of Jurisdiction by Brackins El Private Estate Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB(Ford, Kimberly) Modified on 10/6/2025 (AHI).

| 25 | *Filed & Entered:* | 10/07/2025 | Notice (Other) |
|----|----|----|----|

*Docket Text:* NOTICE by Brackins El Private Estate, The *Ex-Parte Notice of Writ of Mandamus to 11th Circuit & Declaration of Abatement* Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB(Ford, Kimberly)

| 26 | *Filed & Entered:* | 10/08/2025 | Order |
|----|----|----|----|

*Docket Text:* ORDER: In accordance with Rule 42(a) of the Federal Rules of Civil Procedure, and for the same reasons set forth in the Government's Motion to Consolidate, the Court **DIRECTS** the Clerk of Court to consolidate this case, 5:25-cv-1685-LCB, under the lead case, 5:25-cv-1568-LCB, and all further filings must be filed in the lead case **5:25-cv-1568-LCB**. Signed by Judge Liles C Burke on 10/8/2025. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(AHI)

| 27 | *Filed & Entered:* | 10/08/2025 | Order to Show Cause |
|----|----|----|----|

*Docket Text:* **ORDER TO SHOW CAUSE**: Attorney for the Plaintiff, Ms. Ford, has twice been warned that her conduct could lead to sanctions, but she has nevertheless continued to flout court orders, push baseless legal theories, and harass and threaten the Court and opposing counsel. Ms. Ford and her client, Mr. Randy Brackins El, are therefore **ORDERED** to appear in open court at a show cause hearing **SET** for **Tuesday, October 21, 2025 at 10:30 A.M.**, in Federal Courthouse, Huntsville, AL before Judge Liles C Burke and show cause why she should not be sanctioned under Rule 11 of the Federal Rules of Civil Procedure; the Court's inherent authority; Rule 83.1(f) of the Northern District of Alabama's Local Rules; Rules 3.1(a), 3.3, 3.4(c), 3.10, or 8.4 of the Alabama Rules of Professional Conduct; or Model Rules 3.1, 3.4, or 8.4 of the American Bar Association Model Rules of Professional Conduct for the following conduct. The Court will also hear argument on the Government's Motion to Enjoin at the show-cause hearing. Signed by Judge Liles C Burke on 10/8/2025. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB (AHI)

| 28 | *Filed & Entered:* | 10/09/2025 | Notice (Other) |
|----|----|----|----|

*Docket Text:* NOTICE by Brackins El Private Estate Trust *Ex-Parte Notice of Non-Appearance Pending Appellate Review & Reservation of Jurisdictional Objection* Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Ford, Kimberly)

| 29 | *Filed & Entered:* | 10/15/2025 | Motion for Extension of Time |
|----|----|----|----|

| | | | |
|---|---|---|---|
| | *Terminated:* | 10/24/2025 | |

*Docket Text:* MOTION for Extension of Time *to File Response to Complaint* by Alex McKenzie LaGanke. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Long, Don)

| 30 | *Filed & Entered:* | 10/15/2025 | Notice (Other) |
|---|---|---|---|

*Docket Text:* EX PARTE NOTICE OF OBJECTION, CONTINUING BREACH, AND NON-CONSENT TO EXTENSION by Brackins El Private Estate Trust Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Ford, Kimberly) Modified on 10/15/2025 (AHI).

| 31 | *Filed & Entered:* | 10/19/2025 | Notice (Other) |
|---|---|---|---|

*Docket Text:* NOTICE by Brackins El Private Estate Trust *Executed Certificate of Continuing Default and Surcharge Exposure.10.19.25* Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Ford, Kimberly)

| 32 | *Filed & Entered:* | 10/20/2025 | Order |
|---|---|---|---|

*Docket Text:* TEXT ORDER granting (10 Motion for Extension of Time in 5:25-cv-1865-LCB). For good cause shown, Defendant LaGanke's responsive pleading deadline is extended seven days. Defendant LaGanke shall have up to and including 10/29/2025 to file a responsive pleading to the Plaintiff's complaint. Signed by Judge Liles C Burke on 10/20/2025. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB(AHI)

| 33 | *Filed & Entered:* | 10/20/2025 | Order |
|---|---|---|---|

*Docket Text:* ORDER: The plaintiff's motions to remand these cases to state court are **DENIED.** Mr. Brackins El and Ms. Kimberly Ford are reminded that they must appear in open court at the show cause hearing set for **Tuesday, October 21, 2025 at 10:30 A.M., in Federal Courthouse, Huntsville, AL.** Their notice of non-appearance does not excuse them from their duty to appear, and a failure could lead to sanctions for contempt of court. Signed by Judge Liles C Burke on 10/20/2025. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(AHI)

| | *Filed & Entered:* | 10/21/2025 | Show Cause Hearing |
|---|---|---|---|

*Docket Text:* Minute Entry for proceedings held before Judge Liles C Burke: Show Cause Hearing held on 10/21/2025; Don Long and Alex LaGanke present for defendants; Plaintiffs counsel, Kimberly Ford and Mr. Brackens El did not appear; Oral Motion to Dismiss by Defendants Counsel. (Court Reporter Leah Turner.) Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(SPT )

| 34 | *Filed & Entered:* | 10/27/2025 | Motion to Dismiss |
|---|---|---|---|
| | *Terminated:* | 01/23/2026 | |

*Docket Text:* MOTION to Dismiss [1] Complaint by Ruth Ann Hall.Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Bledsoe, Jason) Modified on 10/27/2025 (AHI).

| 35 | *Filed & Entered:* | 10/27/2025 | Notice (Other) |
|---|---|---|---|

*Docket Text:* NOTICE by Brackins El Private Estate Trust *Notice of Jurisdictional Challenge and Verified Declaration of Void Removal* Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Ford, Kimberly)

| 36 | *Filed & Entered:* | 10/27/2025 | Notice (Other) |
|---|---|---|---|

*Docket Text:* NOTICE by Brackins El Private Estate Trust *Ex-Parte VERIFIED DECLARATION OF VOID REMOVAL, NON-JOINDER, AND DEMAND FOR IMMEDIATE REMAND* Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Ford, Kimberly)

| 37 | *Filed & Entered:* | 01/23/2026 | Order Dismissing Case |
|---|---|---|---|

*Docket Text:* ORDER of the Court **Publicly Reprimanding** Kimberly Ford for the misconduct as described in this order; further directing that Ford must provide a copy of this order in every pending state or federal case in which she is counsel of record to her clients, opposing counsel, and the judge presiding over the matter. Ford must comply with this requirement within ten days from the date of this order and must certify to the Court within 24 hours of its completion that the requirement has been met; The Court **Disbars** Kimberly Ford from practice in the United States District Court for the Northern District of Alabama; the Clerk is **Directed** to Serve a copy of this matter on the General Counsel of the Alabama State Bar Association and the Chief Disciplinary Counsel for the Board of Professional Responsibility of the Supreme Court of Tennessee to determine if disciplinary action should be taken and to **Serve** a copy of this order on every judge in the Circuit and District Courts of Madison County, Alabama; the Court **Grants** the Governments oral motion to dismiss and **Dismisses with Prejudice** all claims in The Brackins El Pr. Est. v. White, 5:25-cv-1568-LCB; The Brackins El Pr. Est. Tr. v. Bondi, 5:25-cv-1600-LCB; The Brackins El Pr. Est. Tr. v. Mack, 5:25-cv-1607-LCB; and The Brackins El Pr. Est. Tr. v. LaGanke, 5:25-cv-1685-LCB; **Directing** the clerk to close these four cases. Signed by Judge Liles C Burke on 1/23/26. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(SPT) Modified to update docket text on 1/24/2026 (ALO)

| 38 | *Filed & Entered:* | 02/04/2026 | Order |
|---|---|---|---|

*Docket Text:* ORDER: The Court will conduct a show-cause hearing on **Friday, February 6, 2025, at 10:30 a.m.** in Courtroom IV of the United States Courthouse in Huntsville, Alabama. Kimberly Ford is **ORDERED** to appear in open court at said hearing and show good cause, if any she may have, why the Court should not hold her in civil contempt, impose a fine, and remand her to the custody of the United States Marshals Service until such time as she purges herself of her contempt, for failure to comply with the Court's order. Signed by Judge Liles C Burke on 2/4/2026. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(AHI)

| 39 | *Filed & Entered:* | 02/05/2026 | Order |
|---|---|---|---|

*Docket Text:* ORDER: the Court will conduct a show-cause hearing on **Friday, February 6, 2026, at 10:30 a.m.** in Courtroom IV of the United States Courthouse in Huntsville, Alabama. Ford is **ORDERED** to appear in open court at this hearing and show good cause, if any she may have, why the Court should not hold her in civil contempt, impose a fine, and remand her to the custody of the United States Marshals Service until such time as she purges herself of her contempt, for failure to comply with the Court's order. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(AHI)

| 40 | *Filed & Entered:* | 02/05/2026 | Motion for Miscellaneous Relief |
|---|---|---|---|
| | *Terminated:* | 02/05/2026 | |

*Docket Text:* MOTION MOTION FOR RELIEF FROM VOID JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)(4) re (18 in 5:25-cv-01685-LCB, 24 in 5:25-cv-01600-LCB, 21 in 5:25-cv-01607-LCB, 37 in 5:25-cv-01568-LCB) Order Dismissing Case,,,,,, (26 in 5:25-cv-01600-LCB, 26 in 5:25-cv-01600-LCB, 26 in 5:25-cv-01600-LCB, 20 in 5:25-cv-01685-LCB, 20 in 5:25-cv-01685-LCB, 20 in 5:25-cv-01685-LCB, 39 in 5:25-cv-01568-LCB, 39 in 5:25-cv-01568-LCB, 39 in 5:25-cv-01568-LCB, 23 in 5:25-cv-01607-LCB, 23 in 5:25-cv-01607-LCB, 23 in 5:25-cv-01607-LCB) Order,,, Terminate

Hearings,,, Set Hearings,, (38 in 5:25-cv-01568-LCB, 38 in 5:25-cv-01568-LCB, 25 in 5:25-cv-01600-LCB, 25 in 5:25-cv-01600-LCB, 22 in 5:25-cv-01607-LCB, 22 in 5:25-cv-01607-LCB, 19 in 5:25-cv-01685-LCB, 19 in 5:25-cv-01685-LCB) Order,,, Set Hearings,, by Brackins El Private Estate Trust. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(Ford, Kimberly)

| 41 | *Filed & Entered:* | 02/05/2026 | Order on Motion for Miscellaneous Relief |

*Docket Text:* ORDER: For reasons explained within, [40] is **DENIED**. Kimberly Ford is once more reminded that she must appear in open court tomorrow, **Friday, February 6, 2026, at 10:30 a.m.** in Courtroom IV of the United States Courthouse in Huntsville, Alabama to show good cause, if any she may have, why the Court should not hold her in civil contempt, impose a fine, and remand her to the custody of the United States Marshals Service for failure to comply with the Court's order (Doc. 37). Signed by Judge Liles C Burke on 2/5/2026. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(LCB)

| 42 | *Filed & Entered:* | 02/06/2026 | Order |

*Docket Text:* ORDER: Kimberly A. Ford is found to be in **CIVIL CONTEMPT** for failing to comply with the Court's January 23 order (doc. [37]). The United States Marshals Service is **COMMANDED** to take Ford into custody until she purges herself of her contempt by complying with the Court's January 23 order (doc. 37). The Clerk is **DIRECTED** to serve a copy of this order on the Huntsville office of the United States Marshals Service as more fully set out therein. Signed by Judge Liles C Burke on 2/6/2026. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(LCB)

| 43 | *Filed & Entered:* | 02/06/2026 | Notice (Other) |

*Docket Text:* NOTICE of Release and Compliance with Court's Order. Associated Cases: 5:25-cv-01568-LCB, 5:25-cv-01600-LCB, 5:25-cv-01607-LCB, 5:25-cv-01685-LCB(SPT )

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/07/2026 17:22:26 | | | |
| **PACER Login:** | blackbarbie | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 5:25-cv-01568-LCB |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

## AFFIDAVIT OF ATTORNEY KIMBERLY ADINA FORD, ESQ.

I, **Kimberly Adina Ford**, being first duly sworn, depose and state:

### I. Background

1. I am an attorney licensed in the States of Alabama and Tennessee. I am in good standing with both bars and have practiced law for more than 18 years.

2. I serve as counsel to the Brackins El Private Estate Trust and represent Randy Brackins El in related proceedings in the United States District Court for the Northern District of Alabama, the United States Court of Appeals for the Eleventh Circuit, and the Merit Systems Protection Board.

3. I submit this affidavit in support of the Supplemental Emergency Writ of Mandamus and Writ of Prohibition and to request that this Court issue an order to show cause directed to United States District Judge Liles C. Burke, the United States Department of Justice, the National Aeronautics and Space Administration, and the Merit Systems Protection Board.

### II. Procedural posture and loss of jurisdiction

4. The underlying federal cases captioned Brackins El Private Estate Trust v. White, et al. and related matters were closed by Judge Burke by order dated January 23, 2026 (ECF 37), attached hereto as Exhibit 1 and incorporated by reference herein.

5. At the time of the events described below, I had already filed petitions for writ of mandamus and writ of prohibition in this Court challenging Judge Burke's jurisdiction and seeking to restrain further actions in those closed trust cases.

6. Despite the pendency of those appellate proceedings and the closure of the district court cases, Judge Burke continued to act as though he retained jurisdiction, including by purporting to enforce ECF 37 through custodial measures and by compelling my personal compliance. A copy of the order

Exhibit B

entered February 4 and February 52026 are attached hereto as Exhibit 2 and incorporated by reference herein.

### III. Events of February 6, 2026 – coercive detention

7. On February 6, 2026, Judge Liles C. Burke continued acting after his jurisdiction was exhausted and while the mandamus I filed on behalf of Brackins El Private Estate Trust , as well as the mandamus and prohibition petitions were pending in the Eleventh Circuit, by issuing and enforcing ECF 37 and directing custodial enforcement.  See Exhibit 1 and Exhibit 2.

8. Judge Burke Ordered U.S. Marshals to take me into custody, handcuff me, and detain me on February 6, 2026, without a lawful or legal contempt order, notice, hearing, or any adjudicated basis for confinement, for the purpose of forcing her to sign a "Certificate of Compliance" and circulate ECF 37.   A copy of the Order is attached hereto as Exhibit 3 and incorporated by reference herein.

9. Thereafter, four U.S. Marshalls arrived at my law office. I was not shown any warrant, written contempt order, or written order of commitment. I received no advance notice of any legal or lawful contempt proceeding, no opportunity to obtain counsel separate from my role as counsel of record, and no hearing before being taken into custody.

10. No criminal charge had been filed against me. No pending civil case over which Judge Burke retained jurisdiction involved me as a party. I was detained solely in my capacity as counsel.

11. From the moment the U.S. Marshals arrived at my office, I experienced intense fear and confusion. I had never before been arrested or taken into custody, and I did not understand why armed officers were suddenly at my workplace for me when no criminal charge, warrant, or written contempt order had ever been served.  As they placed me in handcuffs, transported me, and later shackled my hands, waist, and feet, I felt humiliated, exposed, and terrified that I might be jailed indefinitely without any lawful process. I was afraid for my personal safety, for my law license, for my ability to continue representing my clients, and for my reputation in the community, especially knowing that court personnel and others were watching while I was

restrained like a dangerous criminal.  During the transport and confinement I felt my heart racing, my hands shaking, and I struggled to remain composed enough to understand what was being demanded of me.

12. While detained, I was shackled at the wrists and ankles and held in a secured area.  I requested that a deputy take a photograph of me in the restraints and he complied. I remained in custody until I signed a document titled "Certificate of Compliance" and completed related tasks described below.  A photograph of me in the restrains is attached hereto as Exhibit 4.

## IV. Compelled Certificate of Compliance and forced dissemination

12. During my detention, I was presented with a pre-drafted "Certificate of Compliance" reciting that I had "fully complied" with Judge Burke's January 23, 2026 order in Brackins El Private Estate v. White, ECF 37.

13. I was instructed that I would not be released from custody unless and until I signed this Certificate and agreed to send Judge Burke's order to every client, opposing counsel, and state and federal court and administrative tribunal in which I serve as counsel of record.

14. I feared that if I refused to sign the "Certificate of Compliance" Judge Burke presented, I would remain in custody and that my continued detention could be used to destroy my career. Those feelings of fear, anxiety, and humiliation did not end when I was released; since that day I have continued to experience ongoing worry and distress about retaliation, loss of professional standing, and further unlawful actions being taken against me for fulfilling my duties as counsel.

15. I was required to execute the Certificate of Compliance, to place the date on it, and to sign it in my own name. I wrote on the document "UCC 1-308, all rights reserved, under duress" to indicate that my signature was compelled and not voluntary.  A copy of the executed Certificate of Complaint is attached hereto as Exhibit 5 and incorporated by reference herein.

16. Under supervision of custodial staff, I was then required to use my phone and tablet to send mass emails attaching ECF 37 and reciting my "compliance" to:

a.  NASA officials and in-house counsel involved in the underlying employment and whistleblower matters;

b. Department of Justice attorneys involved in the federal litigation;

c. state and federal trial courts where I appear as counsel;

d. the Merit Systems Protection Board in my client's whistleblower appeal; and

e. other recipients identified by the court.

16. I was told that failure to complete these communications would result in continued detention.

17. Only after I completed these steps, signed the Certificate of Compliance, and sent the required emails was I released from custody.  See Exhibit 5.

## V. Retaliatory purpose and interference with pending proceedings

18. At the time of my detention, the Eleventh Circuit mandamus and prohibition proceedings challenging Judge Burke's jurisdiction were pending and active.

19. ECF 37 is the very order whose validity and jurisdictional basis are at issue in those appellate proceedings. Forcing me to certify "full compliance" and to propagate that order across unrelated matters directly undermines my positions before this Court and distorts the appellate record.  See Exhibit 1.

20. Judge Burke had also been placed on notice through prior filings that his continued involvement in the Trust matters, after remand and closure, was disputed and that any further action would be treated as ultra vires.

21. In light of that notice, I believe the February 6, 2026 detention and compelled dissemination of ECF 37 were undertaken not to vindicate any legitimate judicial interest, but to retaliate against my protected advocacy on behalf of a federal whistleblower and to chill further filings in this Court, the MSPB, and other fora.

22. Judge Burke's prior statements and orders have included threats that my bar status could be affected and suggestions that I should seek mental health or substance abuse evaluation, none of which are grounded in any disciplinary proceeding or evidentiary record. These statements, combined with the custodial pressure of February 6, have damaged my reputation and standing as counsel. See Exhibit 1.

## VI. Harm to counsel, clients, and the courts

23. As a direct result of Judge Burke's actions, my professional standing has been harmed. Opposing parties, courts, clerks, and agencies have now received a compelled communication implying that I have been found in contempt and that I am under an adverse order by a United States District Judge. See Exhibit 1.

24. The shackling, custodial detention, and coercion caused significant emotional distress and have impaired my ability to serve as effective counsel in ongoing matters, including my representation of the Brackins El Private Estate Trust and my client's MSPB whistleblower appeal.

25. My clients have been forced to learn that their counsel taken was into custody and compelled to send an order that undermines their legal positions, which has eroded their confidence in the fairness and neutrality of the judicial process.

26. The integrity of ongoing Eleventh Circuit proceedings has been compromised. The order that is the subject of the mandamus and prohibition petitions has now been inserted, under duress, into multiple unrelated dockets, creating confusion regarding jurisdiction and finality.

27. The MSPB, NASA, and DOJ now have notice that a district judge has attempted to influence their handling of my client's matters through coercive action taken against me as counsel, which places them in the position of either ratifying or rejecting an apparent constitutional violation.

28. The injury to my professional reputation, mental health, and practice is ongoing and cannot be fully remedied by later money damages.

## VII. Need for order to show cause

29. The facts set out above are within my personal knowledge. They show that Judge Burke acted without jurisdiction, employed custodial power without lawful process, and interfered with this Court's pending proceedings and my ability to represent my client.

30. I respectfully request that this Court treat this affidavit as corroborating evidence supporting the Supplemental Emergency Writ of Mandamus and Writ of Prohibition and that the Court issue an order requiring:

a. Judge Liles C. Burke to show cause why his actions on and after January 23, 2026, including the February 6, 2026 detention and compelled Certificate of Compliance, do not constitute ultra vires acts and retaliation for protected appellate activity;

b. The Department of Justice and NASA to show cause why they have relied, or intend to rely, on ECF 37 or the compelled Certificate of Compliance in any proceeding, and why they should not be directed to disregard those instruments and to restore the status quo ante;

c. The Merit Systems Protection Board to show cause why it has acted or failed to act in light of documented retaliation against counsel in a pending whistleblower matter, and why it should not be ordered to provide protective measures for my client and for me as his representative;

d. All respondents to identify and correct any use of ECF 37 or the Certificate of Compliance in other dockets, including withdrawal of any filings that treat those instruments as voluntarily accepted or jurisdictionally valid.

31. I further request that this Court clarify that nothing in ECF 37, the Certificate of Compliance, or my custodially compelled emails may be construed as a waiver of my rights, my client's rights, or the jurisdictional objections raised in the pending mandamus and prohibition proceedings.

32. This affidavit is not intended to seek personal relief beyond what the Court deems necessary to protect the integrity of its own proceedings and the constitutional rights of litigants and counsel. It is intended to give the Court a factual record that, if unrebutted, permits decisive corrective action without full merits adjudication of all underlying disputes.

Further, the Affiant sayeth naught.

Respectfully submitted this 7th day of February, 2026. I declare under penalty of perjury that the foregoing is true and correct. Executed on February 7, 2026 at Huntsville, Alabama.

Date: _February 7_, 2026

_Kimberly Adina Ford, Esq._
Kimberly Adina Ford, Esq.

STATE OF ALABAMA        )
LAWRENCE COUNTY         )

Subscribed and sworn to before me this 7th day of February, 2026, by Kimberly A. Ford.

_Felicia H. Brackins_
Notary Public
My Commission Expires: 2-21-2029

Case 5:25-cv-01568-LCB    Document 37    Filed 01/23/26    Page 1 of 56

USCA11 Case: 25-14521    Document: 15    Date Filed: 02/07/2026    Page: 45 of 130

FILED
2026 Jan-23  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRACKINS EL PRIVATE ESTATE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 5:25-cv-1568-LCB** |
| | ) | |
| **CRAIG WHITE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| **BRACKINS EL PRIVATE ESTATE TRUST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 5:25-cv-1600-LCB** |
| | ) | |
| **PAMELA BONDI,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| **BRACKINS EL PRIVATE ESTATE TRUST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 5:25-cv-1607-LCB** |
| | ) | |
| **LARRY K. MACK,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| **BRACKINS EL PRIVATE ESTATE, TRUST** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 5:25-cv-1685-LCB** |
| | ) | |
| **ALEX MCKENZIE LAGANKE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**Exhibt 1**

## ORDER

These four consolidated actions demonstrate the knowing, willful, and bad-faith misconduct of attorney Kimberly Ford. Rather than litigate ethically and within the rule of law, Ford has repeatedly invoked patently frivolous legal theories in her filings before this Court; repeatedly refused to appear at court hearings after being ordered to attend; repeatedly refused to meet Court ordered deadlines; resorted to outrageous threats to and harassment of opposing counsel; and even filed a retaliatory legal action against opposing counsel. Conduct like this is fundamentally incompatible with the orderly administration of justice, leaving no room for doubt that Ford is plainly unfit to practice law before this Court.

For the reasons below, the Court **PUBLICLY REPRIMANDS** Kimberly Ford for her intentional, bad-faith threats and harassment toward opposing counsel, her knowing equivocation with the Court, her abuse of the judicial process and frivolous advocacy, and her willful violations of court orders; **DISBARS** her from practice in the United States District Court for the Northern District of Alabama; **REFERS** the matter of her professional misconduct to the Alabama State Bar Association and the Board of Professional Responsibility of the Supreme Court of Tennessee; and **DISMISSES** these four actions **with prejudice**.

## I.    BACKGROUND

### A.    *Nelson* and *Stewart*

In September 2024, an employee at the National Aeronautics and Space Administration ("NASA") Marshall Space Flight Center, Randy Brackins El, sued NASA and its Administrator, Bill Nelson, for "willful discriminatory and antagonistic acts" that he alleged his colleagues had committed in June of 2020, causing "documented mental health issues." *Brackins El v. Nelson*, 5:24-cv-1244-LCB (N.D. Ala. Sept. 11, 2024), ECF No. 1 at 6. The complaint was signed by Kimberly A. Ford, an attorney with Fordumas LLC, who represented Brackins El throughout the lawsuit. Ford twice amended the complaint on Brackins El's behalf and substituted the United States for Bill Nelson and NASA. *Nelson*, 5:24-cv-1244-LCB, ECF Nos. 12 & 15.

On July 10, 2025, Ford moved for "leave to file an amended supplement ex parte and to seal the record under equity jurisdiction," attaching to her motion a cover page with a header that read "NOTICE OF PRIVATE TRUST MATTER." *Nelson*, 5:24-cv-1244-LCB, ECF No. 16. Citing the Court's "inherent equitable power to adjudicate matters involving trust, fiduciary duty, and constructive relief," Ford urged the Court to seal the record "to preserve the fiduciary integrity of private trust negotiations, protect sensitive estate matters, and safeguard the equitable corpus from disclosure, exploitation, or unauthorized access" to the proceedings. *Id.* at 3.

Her motion also sought permission to file ex parte supplements to the proceedings, asserting that these would "provide the Court with additional relevant information necessary for a fair and complete adjudication of the issues presented." *Id.* at 2–3.

The Court denied the motion. *Nelson*, 5:24-cv-1244-LCB, ECF No. 17. Noting that *Nelson* was "essentially an employment law case," the Court concluded that Ford's request was "irrelevant" to the case's central issues; in lieu of legal authorities on employment litigation, the motion "appear[ed] to advance frivolous 'sovereign citizen' theories that lack any basis in the law" and "have been consistently rejected by the federal courts as utterly frivolous." *Id.* at 3. Brackins El had also advanced the same theories of sovereign citizenship that Ford had espoused, filing two "ex parte notice[s] of lawful private filing for judicial review and record" himself—Ford signed neither—as "Executor/Affiant/Grantor Quo Warranto Assumpsit[,] S Mote Be," *Nelson*, 5:24-cv-1244-LCB, ECF No. 13 at 2, and "Executor, Office of the Private Estate Trust, *All Rights Reserved, Without Prejudice*, Quo Warranto Assumptit[,] So Mote It Be," *Nelson*, 5:24-cv-1244-LCB, ECF No. 14 at 5. In the same order that denied Ford's motion, the Court struck both these "notices." *Nelson*, 5:24-cv-1244-LCB, ECF No. 17. The order closed with a reminder to Ford and Brackins El "that under Rule 11(b) of the Federal Rules of Civil Procedure," to sign a pleading is to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law." *Id.* at 4.

Notwithstanding the Court's Rule 11(b) admonition, Ford promptly filed another document predicated on the same "utterly frivolous" theories of sovereign citizenship, this one entitled "Scroll of Final Trust Claim of Res Possession and Notice of Jurisdictional Correction." *Nelson*, 5:24-cv-1244-LCB, ECF No. 18 at 3. According to this filing, the entirety of the case had "been formally claimed, tendered, and secured as res of the Brackins El Private Estate Trust, a private irrevocable trust estate, by the Private American National/Beneficiary due to breach to the trust," and the "trust" was appearing ("by special appearance only") "to demand full accounting, declaratory relief, and all titles and interests that have been breached and harmed the trust." *Id.* at 4.

The Government moved to dismiss the case, among other reasons, for failure to state a claim upon which relief may be granted. *Nelson*, 5:24-cv-1244-LCB, ECF No. 19. In lieu of responding to the motion to dismiss, Brackins El himself filed an omnibus filing akin to his previous "notices," while Ford filed a "Final Fiduciary Demand for Ledger Disclosure, Equitable Relief, Full Accounting, and Return of All Titles and Interests" and an "ex-parte notice of non-dismissibility in equity." *Nelson*, 5:24-cv-1244-LCB, ECF Nos. 20, 23 & 24. In this third filing, Ford argued that the Court "lack[ed] lawful standing to dismiss, strike, or otherwise dispose of

the Trust's filings," and that "[a]ny attempt to do so would constitute a breach of fiduciary duty and judicial misconduct." *Nelson*, 5:24-cv-1244-LCB, ECF No. 24 at 3.

While *Nelson* was still pending, Ford filed a second lawsuit on Brackins El's behalf in the Circuit Court of Madison County, Alabama, this one against three employees[1] at the NASA George C. Marshall Space Flight Center for their alleged breach of an employment contract. *Brackins El v. Stewart*, 5:25-cv-581-LCB (N.D. Ala. Apr. 17, 2025), ECF No. 1-4. On April 17, 2025, the defendants removed the case to the U.S. District Court for the Northern District of Alabama. *Stewart*, 5:25-cv-581-LCB, ECF No. 1.

The Government moved to dismiss the case on the grounds that Brackins El's claims were non-cognizable under Alabama law, that his claims were barred under 28 U.S.C. § 2680(h), and that he had failed to exhaust his administrative remedies. *Stewart*, 5:25-cv-581-LCB, ECF No. 21. As in *Nelson*, Brackins El ignored the Government's motion and, in July 2025, Ford filed two papers—one entitled "final scroll of fiduciary default, judicial estoppel and demand for equity replevin," the other "Scroll of Final Trust Claim of Res Possession and Notice of Jurisdictional Correction"—while Brackins El himself filed another omnibus filing, each one

---

[1] Namely, Wendell Scott Stewart, Dwight Lewis Mosby, and Sherry Denise Heddleston.

6

resting on the same sovereign-citizen theories advanced in *Nelson*. *Stewart*, 5:25-cv-581-LCB, ECF Nos. 28, 29 & 30.

On August 5, the Court held a hearing on the Government's motion to dismiss *Stewart*. *Stewart*, 5:25-cv-581-LCB, Minute Entry dated August 5, 2025. Neither Ford nor her client appeared at the hearing. *See id.* In an order dismissing the case filed that afternoon, the Court granted the Government's motion, noting that not only had Ford and her client failed to appear at the hearing or respond to the motion, but also that neither had responded to the Court or opposing counsel about their absence from the hearing. *Stewart*, 5:25-cv-581-LCB, ECF No. 31 at 2. The Court reiterated its earlier concerns that their filings were "irrelevant" to the case and "appear[ed] to advance frivolous 'sovereign-citizen' theories that lack any basis in law," and it expressed a new concern "that a member of the bar may be permitting a litigant to draft and submit documents using her signature." *Id.* at 2 n.1.

The next week, the Court held a hearing on the Government's motion to dismiss *Nelson*. *Nelson*, 5:24-cv-1244-LCB, Minute Entry dated August 11, 2025. Once more, Ford and her client both skipped the hearing. *See id.* On September 8, the Court dismissed *Nelson* too, because Brackins El and Ford had "fail[ed] to respond to the motion to dismiss" and "fail[ed] to appear" at the hearing. *Nelson*, 5:24-cv-1244-LCB, ECF No. 26 at 2.

### B.    *White*, *Bondi*, *Mack*, and *LaGanke*

On September 4, 2025, Ford filed a complaint in the Circuit Court of Madison County on behalf of Randy Brackins El as Beneficiary of the Brackins El Private Estate. (Doc. 1-5). The complaint alleged that employees of the NASA Marshall Space Flight Center "published, circulated, and endorsed false statements against the Beneficiary of the Trust" that "fall squarely under Defamation Per Se." *Id.* at 11. On September 12, the Government removed *White* to the U.S. District Court for the Northern District of Alabama. (Doc. 1).

On the same day that *White* was removed, Ford filed a second complaint in the Circuit Court of Madison County on behalf of Randy Brackins El as Beneficiary of the Brackins El Private Estate Trust. *Brackins El Priv. Est. Tr. v. Bondi*, 5:25-cv-1600-LCB (N.D. Ala. Sept. 18, 2025). This second complaint named 18 defendants, including four named in the recently dismissed *Stewart* and three named in *White*.[2] Moreover, some of the defendants included local and federal government officials, such as Madison County Circuit Judge Ruth Ann Hall, then-Director of NASA's Marshall Space Flight Center Joseph Pelfrey, the acting general counsel of the General Services Administration Paul Ingrassia, U.S. Secretary of the Treasury Scott Bessent, and U.S. Attorney General Pamela Bondi. *Bondi*, 5:25-cv-1600-LCB, ECF

---

[2] The full slate of defendants includes Pamela Bondi, Wendell Scott Stewart, Stanley Rhodes, Sherry Huddleston, Craig White, John White, Kristin Pollard Kiel, Pam Bourque, Larry Mack, Phillip Jeff Morton, Paul R. Sullivan, Paula DeCesaris, Dwight Mosby, Paul Ingrassia, Scott Bessent, Joseph Pelfrey, Ann Allen, and the Honorable Ruth Ann Hall.

No. 1-1. On September 18, the case was removed to the U.S. District Court for the Northern District of Alabama. *Bondi*, 5:25-cv-1600-LCB, ECF No. 1.

In the days following removal, Ford filed four "notices" in *White* that appeared to advance frivolous theories of sovereign citizenship raised earlier in *Stewart*. These theories were raised, for example, in a cover sheet attached to each "notice" that purported to preserve the plaintiff's "private status" without submitting "to jurisdiction or public adjudication," with each one setting forth a host of miscellaneous maxims, principles, adages, and dicta in support of the plaintiff's "true standing as a private trust." (Doc. 3 at 1–7; Doc. 4 at 1–6; Doc. 5 at 1–7; Doc. 7 at 1–4). Among the putative authorities cited in these filings are "maxims and principles" from Pomeroy's Equity Jurisprudence ("Equity regards as done that which ought to be done") and Proverbs 11:1 ("A false balance is abomination to the Lord: but a just weight is his delight"); the "Authority and Legal Foundation" contained in IRS Manual § 21.7.13.3.2.1 ("only the Executor lawfully appointed possesses final ledger and accounting authority"); "Equity Jurisprudence" set forth in Blackstone, Book III, Ch. 23 ("establish[ing] private rights restored upon judicial default"); and "Case Law Support" from *Stueffel v. Stueffel*, 114 So. 3d 1 (Ala. Civ. App. 2012) ("One who intermeddles with trust property becomes a trustee de son tort, bound to account in equity.") (Doc. 3 at 3–6). If the filing makes any claims—and it is difficult to say whether it does—it appears to claim that the Court lacks both

subject-matter jurisdiction to hear the case and personal jurisdiction over the plaintiff, because as a "private trust matter," jurisdiction lay solely with "the circuit courts of Alabama." (Doc. 3 at 1, 5).

Similarly, Ford's second filing—the header called it a "notice of criminal exposure, fiduciary breach, and equity enforcement"—alleged a "pattern of jurisdictional breach" by three actors: Madison County Circuit Judge Ruth Ann Hall, opposing counsel Alex LaGanke, and the Court. (Doc. 4 at 7). According to the filing, the Court had acted "without jurisdiction" thereby committing "judicial misconduct" by issuing its "ultra vires Rule 16/26 orders without jurisdiction"—that is, by filing its uniform initial order to govern all further proceedings—which "constitute[ed] misconduct and fiduciary breach as trustee de son tort." (Doc. 4 at 7). The filing "command[ed]" the Court and other "trustee[s]" to show cause under penalty of perjury why certain relief should not "be entered by default," including declaratory relief that "the Brackins El Private Estate Trust stands as Executor–Beneficiary, not employee or surety." *Id.* at 9. Under a heading "warning and consequences," the filing also threatened opposing counsel with "criminal liability" and "prison, fines, and permanent disqualification from office," and it threatened the Court "with personal misconduct referred to the Bar and Inspector Generals." *Id.* These threats escalated in her third and fourth notices, where Ford again accused LaGanke of forum shopping, fraud upon the court, and "vexatious multiplication of

proceedings," and "demand[ed]" that opposing counsel's "conduct be referred for Rule 11 sanctions." (Doc. 5 at 5–6; Doc. 7 at 7–8). This last filing also demanded that opposing counsel respond to an "Affidavit of Admissions" propounded as requests for admission within the filing by "Counsel for the Brackins El Private Estate Trust, pursuant to Rule 36 of the Alabama Rules of Civil Procedure." *Id.* at 9. The first of these, for instance, posed the following question: "At the time the Department of Justice filed its Notice of Removal in this matter, did you have knowledge of Ala. Code §§ 19-3B-201 and -203, which vest exclusive jurisdiction over the administration of trusts in the courts of Alabama?" *Id.*

On September 16, Ford filed a third case on behalf of the Brackins El Private Estate Trust in the Circuit Court of Madison County, this time against NASA employees Larry K. Mack and Paul R. Sullivan, Jr. *Brackins El Priv. Est. Tr. v. Mack*, 5:25-cv-1607-LCB (N.D. Ala. Sept. 19, 2025), ECF No. 1-1. The suit alleged that Mack and Sullivan had breached a "fiduciary duty" they owed to Brackins El through errors to "HR, payroll, and administrative records" concerning his employment at NASA. *Id.* at 1. As with *Nelson, Stewart, White,* and *Bondi*, this case rested on frivolous theories of sovereign citizenship. It alleged, for instance, that "[t]he Brackins El Private Estate Trust appears by Beneficiary[,]" so "[n]o joinder is granted," because "[t]his is not adversarial," and that Mack and Sullivan had "intermeddled with res property" and "failed to correct records," thereby

"compound[ing] their breach." *Mack*, 5:25-cv-1607-LCB, ECF No. 1-1 at 2. It also

demanded a "full accounting of all res property mishandled" and that "all HR,

payroll, and administrative records nunc pro tunc" be "immediate[ly] correct[ed] . . .

to reflect Trust standing." *Id.* As with *White* and *Bondi*, *Mack* was removed by the

Government to the U.S. District Court for the Northern District of Alabama. *Mack*,

5:25-cv-1607-LCB, ECF No. 1.

On the morning of September 18, after reviewing the flurry of notices Ford

had filed in *White*, the Court scheduled an in-person status conference for September

23 at 10:30 a.m. to address Ford's arguments concerning the Court's lack of

jurisdiction and the demand for sanctions against LaGanke. (Doc. 8). A few hours

later, Ford addressed the order in a filing she called an "ex-parte notice of objection

to status conference, demand for remand, and notice of escalation in equity," which

was "Filed on the Equity Side of the Court." (Doc. 9 at 5). According to this filing,

the status conference scheduled for September 23 was "ultra vires absent jurisdiction

established on the record," and so the "Beneficiary," Brackins El, "object[ed]" and

would not appear before the Court "until jurisdictional questions" had been resolved.

*Id.*

Neither would Ford herself. According to the filing, Ford was unable to attend

the status conference because she was set to appear at 9:00 the same morning in the

Circuit Court of Williamson County, Tennessee, in the case of *Tyrone Bledsoe v.*

*Truist Bank*, 24-CV-171. *Id.* The filing also contained the following "escalation warning": if the Court should "refuse[] remand or proceed[] absent jurisdiction, the Beneficiary [would] escalate by [f]iling with the Alabama Supreme Court for protective intervention; [n]oticing the judicial inquiry commission; [and f]iling with the Alabama State Bar for Rule 11 certification fraud." *Id.* at 6.

Following this "notice," the Court scheduled an additional telephone conference for September 19 at 1:30 p.m. and ordered Ford to attend the call. (Doc. 10). But on the morning of September 19, a representative from Ford's office called the Clerk of Court to report, ex parte, that Ford would not attend the telephone conference that afternoon because she was out of state. (Doc. 11). When the Court was apprised of this message, it warned Ford not to skip the hearing:

> Today around 11:51 a.m., an individual purporting to be from Attorney Kimberly Ford's office called the Clerk of Court and reported that Ms. Ford was out of state and would not be on the telephone conference scheduled for today at 1:30 p.m. However, this is an improper communication, which all parties in this matter were not privy to. Additionally, this Court is aware that telephone service exists in all 50 states and has for some time. Again, this Court notes that **Ms. Ford is ORDERED to be on the telephone conference today at 1:30 p.m.** This is an important matter.

*Id.* Thirty-seven minutes before the telephone conference was to begin, Ford made clear that she would not appear by filing an eight-page "ex-parte notice of non-appearance and objection to status conference." (Doc. 12). According to this filing,

Ford was "not available" for the telephone conference because she was "out of state due to a death in her family." *Id.* at 5. "Nonetheless," her notice continued, "a status conference setting prior to the establishment of jurisdiction is not proper and is an act of ultra vires and judicial overreach," and "[m]ore fundamentally," her client had "filed multiple ex parte notices and objections establishing that jurisdiction in this matter has not been perfected," and so "any federal scheduling order or status proceeding is ultra vires and void ab initio." *Id.* at 5. Thus, wrote Ford, "the Brackins El Private Estate Trust, by and through its Fiduciary Counsel," put the "Court on notice" that it would "not appear at the status conference." *Id.* at 6. "Any further attempts to compel appearance or proceed absent jurisdiction," Ford warned, "shall be treated as willful breach, subject to escalation in equity." *Id.*

The Court held the telephone conference at 1:30 p.m. Counsel for the Government appeared. Ford did not. (Minute Entry dated September 19, 2025).

The Court addressed Ford's failure to appear in another order that afternoon. (Doc. 13). As the order explained, the Court had dismissed lawsuits of Ford's in the past—*Nelson* and *Stewart*—precisely because Ford had failed to appear for scheduled hearings; her filings had "repeatedly" invoked frivolous theories of sovereign citizenship "soundly rejected by federal courts," and her recent filings lacked all "foundation in the law." *Id.* at 2–3. Given this history, the Court admonished Ford once more "to thoroughly examine her duties under Rule 11" and

reminded her of the Court's "inherent power to sanction attorneys for misconduct." *Id.* at 3. In closing, the Court reset the telephone conference that Ford had skipped for September 22 at 9:30 a.m. and once more ordered her to attend. *Id.* The Court also ordered Ford to provide, by 5:00 p.m. that evening, the following details of the hearing that she claimed to conflict with the upcoming status conference:

- The complete name and assigned case number of *Tyrone Bledsoe v. Truist Bank*;

- The name of the judge presiding over *Tyrone Bledsoe v. Truist Bank*;

- The phone number of the judge presiding over the *Tyrone Bledsoe v. Truist Bank*; and

- A PDF copy of the order setting the conflicting hearing in *Tyrone Bledsoe v. Truist Bank*.

*Id.* at 4.

With three cases of Brackins El's now before the Court—*White*, *Bondi*, and *Mack*—all arising from the same "grievances" and "nucleus of fact: his suspension from federal employment," the Government moved on September 19 under Rule 42(a) of the Federal Rules of Civil Procedure to consolidate the three cases, with *White* to serve as the lead. (Doc. 14). The Court granted the motion. (Doc. 15).

At 4:16 p.m. that same Friday afternoon, Ford filed an "ex-parte notice of removal to the Alabama Supreme Court" concerning "All Trust Cases Improperly Removed to Federal Jurisdiction." (Doc. 16 at 5). Even though the Alabama Supreme Court had never exercised jurisdiction over these cases, which were

properly removed to federal court, Ford once more warned the Court of "escalation and consequence[s]," including "[r]eferral to the Judicial Inquiry Commission and Alabama State Bar"; notified it of opposing counsel's "federal misconduct" by "attempt[ing] to remove equity trust cases into federal jurisdiction"; and announced that it had committed "constitutional violation[s]" under Article III, § 2 of the U.S. Constitution by "attempt[ing] to compel appearances and telephone conferences despite the Trust's formal objection and repeated Ex Parte Notices of Non-Appearance," which "constitute[d] judicial overreach, an act ultra vires, and an impermissible joinder attempt to collapse trust res." *Id.* at 6–7.

What Ford did not file was her court-ordered response with details of her hearing scheduled in the Circuit Court of Williamson County, Tennessee for the morning of September 23.

Over the following weekend, Ford e-mailed a letter to LaGanke to warn her that the Government's "continued participation in [the] proceedings . . . constitute[d] ultra vires action and misconduct on the face of the record." (Doc. 17 at 1). Moreover, she claimed, LaGanke's "certifications purporting to remove or consolidate cases where DOJ actors are named defendants are void ab initio" and "constitute[d] defective process, fraud upon the court, and a direct violation of Rule 8.4(c) of the Alabama Rules of Professional Conduct, which prohibits dishonesty,

fraud, deceit, and misrepresentation." *Id.* at 2. The letter threatened LaGanke with a

"Notice of Consequences":

> One more misstep in attempting to act upon this matter
> outside the exclusive jurisdiction of Alabama equity will
> trigger the following:
>
> 1. Referral to the Alabama State Bar for disciplinary
>    proceedings, up to and including disbarment.
>
> 2. Demand for sanctions in the Alabama Supreme Court
>    record.
>
> 3. Escalation of misconduct filings to oversight
>    authorities and professional regulators.

*Id.* at 2. According to Ford, this letter was sent as a "courtesy," because the case had

"already been removed to the Alabama Supreme Court"—it had not—and so "any

judicial authority has been extinguished." *Id.* at 3. The Court was copied on the

email, and the letter was entered on the docket. *Id.* at 4.

On the morning of Monday, September 22, the Court held the telephone

conference it had rescheduled to accommodate Ford's absence. (Minute Entry dated

September 22, 2025). Ford did not appear. *See id.* Once more, the Court ordered

Ford to provide details of the hearing in Tennessee that she claimed would conflict

with the next day's hearing and gave her till 5:00 p.m. that evening to submit the

information. *Id.* at 4–5. Once more, she did not.

Instead, Ford e-mailed LaGanke a second letter. (Doc. 20-2). With "Notice of

Continued Malfeasance and Record of Surcharge" in the e-mail's subject line, this

letter renewed Ford's express threats to LaGanke and insisted further on the "exclusive jurisdiction" of "Alabama equity courts." The letter purported to "serve[] as formal notice from the Brackins El Private Estate Trust" that LaGanke's filings "included fraudulent certifications and procedural mischaracterizations," conduct, wrote Ford, that constituted "ultra vires" actions "sanctionable under Rule 11" and amounting to a "fiduciary breach." *Id.* at 1. The letter warned LaGanke that "continued resistance [would] result in formal bar complaints, surcharge proceedings, and pursuit of disbarment," and it claimed that LaGanke was "personally liable for any further obstruction." *Id.* at 2. "One more misstep" Ford wrote in closing, "will trigger immediate ethics escalation." *Id.*

The in-person status conference proceeded on September 23 as scheduled. LaGanke appeared; Ford, yet again, did not. (Minute Entry dated September 23, 2025).

Three days later, the Government moved to dismiss Brackins El's three amended complaints and declare him a vexatious litigant. (Docs. 21 & 22). In moving to dismiss, the Government argued that Brackins El's suits against the federal defendants—all defendants, that is, except Judge Ruth Ann Hall—failed for four independent reasons: (1) the Court lacked subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3); (2) the plaintiff's tort claim was barred by the Civil Service Reform Act; (3) the plaintiff had failed to state a

claim upon which relief can be granted; and (4) a trust was an improper party under Federal Rule of Civil Procedure 17(a). (Doc. 21). In a separate motion, the Government asked the Court to deem Randy Brackins El a vexatious litigant under 28 U.S.C. § 1651(a) and enjoin all further filings from him, any trusts in his name, and "all variations thereof" from filing further in the Northern District of Alabama, Alabama state courts, and certain federal agencies without first seeking the Court's leave. (Doc. 22 at 2). The motion also notified the Court of the Government's intent to seek sanctions against Ford under Rule 11(c)(2). *Id.* at 9.

On September 30, LaGanke shared a draft of the Government's Motion for Sanctions with Ford. (Doc. 23-1 at 17–24). As LaGanke explained in the e-mail to Ford, Rule 11(c)(2) gave Ford 21 days "to either withdraw or 'appropriately correct' [her] numerous improper filings" before the Government could file its motion. *Id.* at 18.

On October 1, Ford sued LaGanke on behalf of the Brackins El Private Estate Trust in the Circuit Court of Madison County, Alabama for "trespass upon the res, intimidation of counsel, and mischaracterization of Trust proceedings." *Brackins El Priv. Est. Tr. v LaGanke*, 5:25-cv-1685 (N.D. Ala. Oct. 2, 2025), ECF No. 1-1 at 7. Among the relief sought in the lawsuit was a demand for "full personal liability assessed against Ms. LaGanke for trespass, harassment, and fiduciary breach," an

injunction to "[b]ar Ms. LaGanke from further interference with the Trust," and a referral "to the Alabama State Bar for investigation and sanction." *Id.* at 9.

Ford notified LaGanke of the lawsuit by e-mail later that day. (Doc. 23-1). In the e-mail, Ford claimed that the "'intent to sanction letter' . . . constitute[d] trespass upon the res, intimidation of fiduciary officers, and an assumption of fiduciary functions without authority." *Id.* at 1. The e-mail accused LaGanke of violating Alabama Rules of Professional Conduct 3.1, 4.4, and 8.4(a)–(d), and it announced that her letter would be sent "to the Alabama State Bar for disciplinary review." *Id.*

Ford's e-mail also included a letter she had sent to the Alabama State Bar for review of LaGanke's conduct "in connection with ongoing litigation concerning the [Brackins El Private Estate] Trust." (Doc. 23-1 at 3). Under the subject line of "Complaint Against Attorney Alex McKenzie LaGanke (DOJ Counsel) – Misuse of Rule 11 and Breach of Ethical Duties," the letter alleged that LaGanke had submitted frivolous filings "on a docket that is void and abated by prior state filings, and was advanced in a manner calculated not to serve legitimate legal process, but to intimidate and chill my representation of the Trust." *Id.* According to the letter, LaGanke's conduct thus violated Rules 3.1, 4.4(a), and 8.4(d) of the Alabama Rules of Professional Conduct, because her letter was "frivolous" and "made on a void docket," because it "served no litigation purpose other than harassment," and

because it was "prejudicial to the administration of justice." *Id.* at 3–4. Ford thus

asked the Bar to take the following actions:

> 1. Open an investigation into LaGanke's conduct.
>
> 2. Issue appropriate disciplinary measures for harassment and abuse of process.
>
> 3. Clarify that counsel representing a private trust, in good faith filings, are entitled to be free from intimidation and sanction threats designed to obstruct equity jurisdiction.

*Id.* at 4.

On October 2, the Government removed the case against LaGanke to the U.S.

District Court for the Northern District of Alabama, where it was consolidated under

Federal Rule of Civil Procedure 42(a) with *White*, *Bondi*, and *Mack*. *LaGank*e, 5:25-

cv-1685, ECF No. 1; (Doc. 26).

Ford then sent LaGanke a "follow-up" letter. (Doc. 23-2). The letter's putative

purpose was to notify the Government that its notice of removal was "void ab initio";

that LaGanke had "trespassed against the res," thereby exposing her to "personal

surcharge, restitution, and specific performance . . . independent of any agency

shield"; and that her conduct "constitute[d] forum shopping and intimidation

directed at a protected fiduciary relationship." (Doc. 23-2 at 2). Ford wrote that the

"record" had thus "been preserved for Alabama State Bar review, and a disciplinary

complaint [was] being advanced in parallel." *Id.* Attached to the letter was an "ex

parte supplemental notice of void removal supervisory demand, and surcharge liability" that Ford had filed with the Supreme Court of Alabama. *Id.* at 4–7. The filing asked the Alabama Supreme Court to "[d]eclare the attempted removal void ab initio" and "[d]irect" the Circuit Court of Madison County "to proceed with TRO enforcement nunc pro tunc." *Id.* at 6.

On October 6, Ford filed another notice purporting to disclaim the Court's subject-matter jurisdiction over each of the consolidated cases and demanding that they be remanded to the Circuit Court of Madison County, Alabama. (Doc. 24). When no remand was forthcoming, Ford petitioned the U.S. Court of Appeals for the Eleventh Circuit the next day for a writ of mandamus. (Doc. 25-1); *In re Brackins El Priv. Es. Tr.*, 25-13497 (11th Cir. Oct. 7, 2025). According to the petition's preliminary statement, "[f]ederal jurisdiction never attached," because "the controversy concerns only the internal administration of a private trust governed by Alabama law." *In re Brackins El Priv. Est. Tr.*, 25-13497, ECF No. 1-2 at 15. In Ford's view, the Court's "sole ministerial duty was to remand the case to state court once jurisdiction was contested." *Id.* at 15. The petition therefore "demand[ed]" that the Eleventh Circuit take the following actions:

1. Issue a Writ of Mandamus restraining and terminating all magistrate activity over the Trust;

2. Compel the District Court to acknowledge the exclusive jurisdiction of equity invoked by the Brackins El Private Estate Trust;

22

3. Abate all civil proceedings, status hearings, or administrative misclassifications inconsistent with trust law; [and]

4. Sanction or surcharge any judicial actor who, with notice, acts ultra vires to convert, ignore, or bypass the Trust's filed posture.

*Id.* at 22.

## C.   The Show-Cause Order

On October 8, 2025, the Court ordered Ford to show cause why she should not be sanctioned under Rule 11 of the Federal Rules of Civil Procedure, the Court's inherent authority; Rule 83.1(f) of the Northern District of Alabama's Local Rules; Rules 3.1(a), 3.3, 3.4(c), 3.10, or 8.4 of the Alabama Rules of Professional Conduct; or Model Rules 3.1, 3.4, or 8.4 of the American Bar Association Model Rules of Professional Conduct for the following conduct:

- Willfully violating court orders (Docs. 8, 10, 11, 13 & 19) by failing to appear at the telephonic status conferences on September 19 and September 22, 2025, and the in-person status conference on September 23, 2025; and by failing to submit the court-ordered information on September 19 and September 22, 2025;

- Equivocating with the Court about her reasons for failing to appear at the telephonic status conference on September 19, 2025 (Docs. 11 & 12);

- Presenting filings to the Court (i) for an improper purpose, such as to harass, or (ii) with claims, defenses, and other legal contentions unwarranted by existing law (Docs. 1-1, 1-2, 3, 4, 5, 7, 9, 12, 16, 24 & 25);

> *Brackins El Private Estate v. Bondi*, 5:25-cv-1600-LCB (N.D. Ala. September 18, 2025), (Docs. 1-1 & 1-2); *Brackins El Private Estate v. Mack*, 5:25-cv-1607-LCB (N.D. Ala. September 19, 2025), (Docs. 1-1 & 1-2); and *Brackins El Private Estate v. LaGanke*, 5:25-cv-1685-LCB (N.D. Ala. October 2, 2025), (Docs. 1-1 & 2); and
>
> - Threatening the Court, its officers, and opposing counsel with litigation, sanctions, criminal liability, referrals to state bar disciplinary committees and the Judicial Inquiry Commission (Docs. 4, 5, 7, 9, 16, 17, 20, 23-1, 23-2 & 25); and *Brackins El Private Estate v. LaGanke*, 5:25-cv-1685-LCB (N.D. Ala. October 2, 2025).

(*Id.* at 3). The Court warned Ford that she could face sanctions for these acts and omissions, including "suspension or disbarment from the Northern District of Alabama; public or private reprimand, monetary sanctions, or attorneys' fees." *Id.* at 3. The Court scheduled a show-cause hearing for October 21, and ordered both Ford and Brackins El to appear. *Id.* at 3–4.

In response to the show-cause order, Ford filed a notice stating that she and Brackins El would "defer physical appearance at hearings or status conferences until the appellate court confirms the scope of this Court's jurisdiction." (Doc. 28 at 6). According to Ford, her notice was "not a refusal to obey lawful process," but rather "a procedural safeguard to avoid duplicative or inconsistent proceedings." *Id.*

On October 15, LaGanke moved for an extension of time to respond to the complaint in *Brackins El Private Estate Trust v. LaGanke*, 5:25-cv-1685-LCB. (Doc.

29). As LaGanke explained in her motion, the complaint had been filed October 1, so under the Federal Rules of Civil Procedure her responsive pleading was due by October 22. *Id.* at 2. Due to "professional obligations," however, she requested a seven-day extension to respond to the complaint. *Id.* at 3.

Ford objected. In a same-day opposition "notice of objection, continuing breach, and non-consent to extension," Ford argued that LaGanke's motion was "without lawful authority, after lapse of the responsive period, and within a forum whose removal was void ab initio." (Doc. 30 at 6). Ford argued that LaGanke had not filed a "timely answer or Rule 12(b) motion" and was thus in "default" under Rule 55(a) of the Federal Rules of Civil Procedure. *Id.* at 7. She further claimed that LaGanke's "responsive window ha[d] elapsed," and so "any subsequent motion for extension [was] procedurally defective." *Id.*

The Court found good cause for LaGanke's request, granted her motion, and extended her response deadline to October 29. (Doc. 32).

On October 19, Ford submitted a filing under the heading "certificate of continuing default and surcharge exposure" concerning a "Notice of Governmental Stand-Down and Constructive Insolvency of Office." (Doc. 31). In yet another filing larded with impenetrable jargon and non-cognizable claims, Ford purported to notify the Court that five days had elapsed since she had served her last notice "without remand, accounting, or written cure from any federal officer." *Id.* at 6. Thus, wrote

Ford, the Court's "continued retention of the record constitute[d] fiduciary default."

*Id.*

In the same filing, Ford gave "notice" that "any judge or magistrate whose impartiality might reasonably be questioned is disqualified from further participation." *Id.* at 7. She then set forth a "Notice to Oversight Bodies" to apprise the Court that "[c]ertified copies of this Certificate shall be transmitted to the Eleventh Circuit Judicial Council, the Alabama Supreme Court Clerk, and the Office of the Inspector General as evidence of ministerial collapse" during the government shutdown that was then still underway. *Id.*

Construing Ford's raft of "demands" as motions to remand these cases to state court, the Court concluded that it had jurisdiction under 28 U.S.C. § 1442(a)(1) and denied the motions, because *White*, *Bondi*, *Mack*, *and LaGanke* were each brought "against federal officers acting within the scope of their employment 'in an official or individual capacity.'" (Doc. 33 at 3). After a brief summary of the case history, the Court concluded that Ford and her client were likely "to skip the show-cause hearing on the putative grounds that the Court lacks authority to compel their presence." *Id.* at 5. But because they were plainly "mistaken," Ford and Brackins El were reminded that they "must appear in open court at the show cause hearing" scheduled for the next day. *Id.* at 5–6. Their "notice of non-appearance" did not

"excuse them from their duty to appear," the Court warned, and "a failure [to appear] could lead to sanctions for contempt of court." *Id.* at 6.

The Court held the show-cause hearing on October 21. Neither Ford nor Brackins El appeared. The Government therefore made an oral motion at the show-cause hearing to dismiss all four cases with prejudice under Federal Rule of Civil Procedure 41(b). (Minute Entry dated October 21, 2025). According to the Government, Ford's behavior demonstrated a clear pattern of delay and willful contempt, and so a lesser sanction would not suffice. In addition to the Government's oral motion, Madison County Circuit Judge Ruth Ann Hall filed a written motion to dismiss all claims against her. (Doc. 34).

After the show-cause hearing, Ford filed two more documents—a "Notice of Jurisdictional Challenge and Verified Declaration of Void Removal" and a "Verified Declaration of Void Removal, Non-Joinder, and Demand for Immediate Remand." (Docs. 35 & 36). In these two documents, Ford repeated the same arguments already rejected by the Court in its order denying her motions to remand—namely, that the Court did not have jurisdiction over the claims, and that "any post-removal acts [were] without force." (Doc. 35 at 13; Doc. 36 at 12).

On October 28, the Eleventh Circuit denied the petition for a writ of mandamus Ford had filed on her client's behalf. *In re Brackins El Priv. Es. Tr.*, 25-13497, ECF No. 7-2. As the court explained, "[a] writ of mandamus is a drastic and

extraordinary remedy reserved for really extraordinary causes amounting to a judicial usurpation of power or clear abuse of discretion," that's justified only where the petitioner has shown that he or she "has no other avenue of relief and that the right to relief is clear and indisputable." *Id.* (cleaned up). Ford did not meet that burden. *See id.*

## II.    LEGAL STANDARDS

### A.    Rule 11

District courts may impose "appropriate sanction[s]" against an attorney, "after notice and a reasonable opportunity to respond," for violating Rule 11(b) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 11(c). Rule 11(b) provides the following:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

To impose sanctions under Rule 11(b) for filing frivolous pleadings or motions, the court must find that (1) "the claims were 'objectively frivolous,'" and (2) "the attorney 'who signed the pleading should have been aware that they were frivolous.'" *Trump v. Clinton*, 161 F.4th 671, 691 (11th Cir. 2025) (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

Courts have available a "variety of possible sanctions" for Rule 11 violations, including both monetary and non-monetary, and the freedom to "tailor sanctions to the particular facts of the case." FED. R. CIV. P. 11(b) and (c), advisory committee's note to 1993 amendment; FED. R. CIV. P. 11, advisory committee's note to 1983 amendments. While courts have "significant discretion in determining what sanctions" to impose, courts are limited to only those sanctions that are "reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." FED. R. CIV. P. 11(b) and (c), advisory committee's note to 1993 amendment. This is because the purpose of Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." FED. R. CIV. P. 11, advisory committee's note to 1983 amendment.

### B.    Rule 83.1(f) of the Northern District of Alabama Local Rules

Under Rule 83.1(f) of the Northern District of Alabama Local Rules, attorneys may be sanctioned for violating the court's Local Rules, the Alabama Rules of Professional Conduct, or the American Bar Association Model Rules of Professional Conduct. "Discipline under this Rule may consist of disbarment, suspension, censure, reprimand, removal from a particular case . . . monetary sanctions, or any other sanction the court may deem appropriate." N.D. Ala. Local Rule 83.1(f).

### C.    Alabama Rules of Professional Conduct

Rule 3.1(a) of the Alabama Rules of Professional Conduct prohibits attorneys from "fil[ing] a suit, assert[ing] a position . . . or tak[ing] other action on behalf of the lawyer's client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

Rule 3.3(a)(1) of the Alabama Rules of Professional Conduct prohibits attorneys from "knowingly [m]ak[ing] a false statement of material fact or law to a tribunal."

Rule 3.4(c) of the Alabama Rules of Professional Conduct prohibits attorneys from "[k]nowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

Rule 3.10 of the Alabama Rules of Professional Conduct prohibits attorneys from "present[ing,] participat[ing] in presenting, or threaten[ing] to present criminal charges solely to obtain an advantage in a civil matter."

And under Rule 8.4 of the Alabama Rules of Professional Conduct, a lawyer commits professional misconduct if he should:

> (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> . . .
>
> (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> (d) Engage in conduct that is prejudicial to the administration of justice;
>
> . . .
>
> (g) Engage in any other conduct that adversely reflects on his fitness to practice law.

## D.    The Court's Inherent Authority to Sanction Bad-Faith Conduct

Courts also have the "inherent power" to sanction attorneys for the "full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). This power allows courts to "control admission to its bar and to discipline attorneys," *id.* at 43, and "can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49. To "unlock" its inherent power, "a court must find that a party or his

attorney acted in 'bad faith.'" *Trump*, 161 F.4th at 688 (quoting *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015)).

Courts may find bad faith where an "attorney knowingly or recklessly raises a frivolous argument," where she "delay[s] or disrupt[s] the litigation," or where she otherwise "hamper[s] enforcement of a court order." *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2005). If "direct evidence of subjective bad faith" is absent, bad faith conduct may still be found where "an attorney's conduct is so egregious that it could only be committed in bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224–25 (11th Cir. 2017). For example, an attorney who "willfully abuse[s] the judicial processes" has acted in "bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

The Court assumes without deciding that before imposing a sanction, it must find bad faith by "clear and convincing evidence." *See JTR Enters., LLC v. Columbian Emeralds*, 697 F. App'x 976, 988–89 (11th Cir. 2017).

Sanctions under a court's inherent authority "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. In deciding whether to use this inherent power to impose sanctions, courts "should look for disobedience" and seek to "vindicate[e] judicial authority." *Purchasing Power, LLC*, 851 F.3d at 1225. Nonetheless, a court's inherent powers allow it "to fashion an appropriate sanction

for conduct which abuses the judicial process." *Id.* at 1223 (11th Cir. 2017) (quoting *Chambers*, 501 U.S. at 44–45).

### E.    Federal Rule of Civil Procedure 41(b)

Under Rule 41(b), a defendant may move to dismiss a case "if the plaintiff fails to comply with [the Federal Rules of Civil Procedure] or a court order." FED. R. CIV. P. 41(b). "Unless the order states otherwise," dismissal under Rule 41(b) is with prejudice. FED. R. CIV. P. 41(b). A Rule 41(b) dismissal is an appropriate sanction when (1) there is "a clear record of delay or willful contempt," and (2) lesser sanctions would not suffice. *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1339 (11th Cir. 2005).

### III.   FINDINGS OF FACT & CONCLUSIONS OF LAW

After careful consideration of the record of the proceedings in these four consolidated cases, the Court finds the facts below by clear and convincing evidence.

### A.    Ford committed sanctionable misconduct by filing pleadings, written motions, and other papers that advanced claims, defenses, and other legal contentions unwarranted by existing law.

1.    Ford presented the Court with 19 pleadings, motions, and other papers—by signing, filing, and submitting them—with claims, defenses, and other legal contentions unwarranted by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law or for establishing new law.[3] Each of the consolidated cases and all the filings in them rest on the plainly frivolous theory that the Court lacks jurisdiction over Ford herself, her client, and these cases; that its orders are void; and that it therefore cannot compel her or her client to appear in court. Although the phrase appears nowhere in her filings, the thrust of these arguments is that Ford's client, Randy Brackins El, is a sovereign citizen who lies beyond the Court's authority. The Government put the matter succinctly in its Motion for Sanctions: Ford's filings "are replete with the legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign-citizen movement." (Doc. 23-1 at 22) (quoting *Sealey v. Branch Banking and Tr. Co.*, 2019 WL 1434065, at *2 (M.D. Ala. Feb. 21, 2019)).

The Eleventh Circuit has repeatedly dismissed sovereign citizen theories as "frivolous." *See, e.g., United States v. Sterling*, 738 F.3d at 228, 233 n.1 (11th Cir. 2013). In *Sterling*, for instance, the Eleventh Circuit explained that "so-called 'sovereign citizens' . . . believe they are not subject to the jurisdiction of the courts and . . . frequently deny that they are [parties] in the action, instead referring to themselves as third-party intervenors." *Id.* Frequently "confronted" by these

---

[3] *See* (Docs. 1-1, 3, 4, 5, 7, 9, 12, 16, 24, 25, 28, 30, 31, 35 & 36); *Bondi*, 5:25-cv-1600-LCB, ECF No. 1-1; *Mack*, 5:25-cv-1607-LCB ECF No. 1-1; *LaGanke*, 5:25-cv-1685-LCB, ECF Nos. 1-1 & 2.

litigants' "attempts to delay judicial proceedings," courts have "summarily rejected their legal theories as frivolous." *Id.*

Similarly, in *Henry v. Fernandez-Rundle*, the Eleventh Circuit affirmed the summary dismissal of a frivolous complaint "saturated with legal terms and concepts" that were "nonsensical" and lacked all support for "any sort of viable cause of action." 773 F. App'x 596, 597 (11th Cir. 2019) (cleaned up). The plaintiff in *Henry* never used the term "sovereign citizen," referring to himself instead as a "secured party/creditor" and a "natural born, free, living, breathing, flesh and blood human with sentient and moral existence." *Id.* at 596. But that didn't matter. Whether he "call[ed] himself a sovereign citizen or not, it [was] clear that his complaint [was] premised on the same types of legal theories advanced by other sovereign citizens[.]" *Id.* (citing *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011)). No matter what a litigant might call himself, claims like his have "no arguable legal basis and are [therefore] patently frivolous." *Id.* (citing *Benabe*, 654 F.3d at 767 ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' [] 'a flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts.")).

In addition to arguing that he is "not subject to the jurisdiction of the courts," *id.*, the typical sovereign-citizen litigant will "file[] lots of rambling, verbose motions" and "refuse to respond coherently to even the simplest question posed by

the Court." *United States v. Perkins*, No. 1:10-cr-97-1-JEC-LTW, 2013 WL 3820716, at *2 (N.D. Ga. Jul 23, 2013). A typical strategy of litigants like these is to bring claims on behalf of a trust. *See, e.g., Simmons as Tr. for Robert Kyle Simmons Tr. v. Shellpoint Mortg. Servicing*, Case No. 2:24-CV-647-RAH-SMD, 2025 WL 1913373 (M.D. Ala. Apr. 28, 2025).

The 19 filings submitted by Ford in *White*, *Bondi*, *Mack*, and *LaGanke* follow the sovereign-citizen playbook to a tee. To begin with, the cases are brought in the name of a putative trust, "the Brackins El Private Estate Trust," with Randy Brackins El as beneficiary. The pleadings, motions, and other papers all deny that Brackins El is a party to the case—the "document[s]," they claim, are "being recorded on the public record for the sole purpose of giving constructive notice of the existence of a private trust"—and insist that neither he nor Ford is subject to the Court's jurisdiction. Ford, in short, has "saturated" the filings with legal terms that purport to disclaim the Court's jurisdiction, couching all claims, defenses, and other arguments in the jargon of trusts, maxims of equity, "principles of private contract," or biblical authorities with no relevance to the employment dispute that motivated these suits in the first place.

Each document includes a cover letter, notice, and signature block purporting to preserve the Brackins El Private Estate Trust's private rights, exercised "under private trust jurisdiction" rather than the Court's, as well as its rights in "equity" to

make "lawful demand[s] for ministerial compliance." *See, e.g.* (Doc. 31). Through

these filings, Ford "clings doggedly to the sovereign-citizen script, which the record

. . . reveals to be tedious and mind-numbingly repetitious." *Perkins*, 2013 WL

3820716, at *2. The best way to illustrate the jargon-rich, combative nature of Ford's

arguments and the self-evident frivolousness of her filings is to quote them at length.

Here, for example, is the text of the cover letter she has attached to all her filings:

NOTICE OF EX PARTE TRUST MATTER

> This record is entered for evidentiary and notice purposes only. Nothing herein shall be construed as a voluntary submission to jurisdiction or public adjudication. Entry into the record does not waive any rights, remedies, or private status.

> This document is being recorded on the public record for the sole purpose of giving constructive notice of the existence of a private trust. This document, its terms, and its parties remain private, non-public, and are not submitted for adjudication or administrative review. All rights reserved, none waived. Recording of this document does not constitute a waiver of privacy, ownership, or trustee direction, and does not confer jurisdiction or authority to any public agency, officer, or court to modify, interpret, or intervene in the private affairs of the trust. This record is evidence of status only.

> This document is protected under the principles of private contract, Article I Section 10 of the United States Constitution, and applicable trust law. No part of this instrument may be construed to place the trust corpus, affairs, or administration under public authority. "Equity regards the beneficiary as the true owner."

> - "Equity imputes intention to fulfill obligation."

37

- "Equity looks to substance, not form."
- "Trust follows the law, but equity governs the duty."
- "Where equity is equal to the law, equity shall prevail."
- "Equity acts in personam, not in rem."

NOTICE TO CLERK:

This filing is not adversarial. No joinder is granted. This instrument is private equity record and must be docketed pursuant to Federal Rule of Civil Procedure 5(d)(4). The Court and its clerks act ministerially under notice of trust possession. Any further statutory interpretation or adversarial designation is hereby rebutted by trust record.

*/s/ Beneficiary*

(Doc. 1-1 at 1-2). Next comes her "Notice and Command to the Clerk of Court,"

which begins thus:

Let this Notice be entered as formal and final command to the Clerk of Court to seal the Equity Docket to the Brackins El Private Estate Trust.

All filings have been duly and lawfully entered under private trust jurisdiction. The forum has been noticed, breaches declared, dishonors recorded, and equity affirmed. The Office of the Executor now issues this lawful demand for ministerial compliance by the Clerk:

- To seal the record,
- To protect the corpus, and
- To conclude the matter in accordance with law, duty, and equity.

*Id.* at 3. The rest of this "Notice and Command" cites to a host of the authorities mentioned earlier in this order, like Pomeroy §§ 395, 818 and "maxims of equity," and sets forth a "Final Admonition":

- The Clerk is hereby warned: Any refusal to seal constitutes ministerial breach and unauthorized tampering with a private trust corpus. Such refusal will trigger notice of ministerial default and liability by surcharge.
- "For by thy words thou shalt be justified, and by thy words thou shalt be condemned." Matthew 12:37.

*Id.*

Many of Ford's filings also contained the same signature block:

This communication is submitted strictly from the Office of Fiduciary Counsel on behalf of the Brackins El Private Estate Trust and is not, nor shall it be construed as, consent to joinder, suretyship, or appearance on behalf of any artificial person, legal fiction, or U.S. citizen designation. All rights are reserved under equitable jurisdiction, and the undersigned operates solely in her capacity as Fiduciary Counsel to the Trust, under the express authority of the Executor and in protection of the res.

Pursuant to UCC § 1-308, all rights and remedies are expressly reserved without prejudice. No statements herein shall be deemed a waiver of Trust separation, nor construed as a submission to any foreign or statutory jurisdiction. The Brackins El Trust is a private estate existing in equity, and all parties are hereby noticed that any presumption of agency, joinder, or citizenship-based authority is expressly rebutted nunc pro tunc to original formation.

Executed in honor and private equity jurisdiction.

(Doc. 31 at 6).

The Court thus has no difficulty concluding that the claims, defenses, and other legal contentions found in each pleading, motion, and other paper that Ford presented to the Court were unwarranted by existing law.

2.     By submitting these pleadings, motions, and other papers to the Court with claims, defenses, and other legal contentions unwarranted by existing law, Ford violated Federal Rule of Civil Procedure 11(b)(2).

First, for the reasons discussed above, each of the 19 documents Ford submitted in *White*, *Bondi*, *Mack*, and *LaGanke* were presented to the Court with claims, defenses and other legal contentions unwarranted by existing law. Second, Ford knew or should have known that her pleadings were frivolous. The Eleventh Circuit has repeatedly rejected sovereign citizen theories as baseless in the law and patently frivolous. *See, e.g.*, *United States v. Sterling*, 738 F.3d at 233 n.1 (11th Cir. 2013); *Henry v. Fernandez-Rundle*, 773 F. App'x 596, 597 (11th Cir. 2019); *accord Trevino v. Florida*, 687 F. App'x 861, 862 (11th Cir. 2017). Additionally, the use of a legal instrument, such as a trust, or the use of obscure labels, such as "living man," do not strip the court of its jurisdiction. *See Henry*, 773 F. App'x at 597 (citing *Benabe*, 654 F.3d at 767). Had Ford researched these issues whatsoever, she would have recognized at once that her arguments lacked all merit.

Moreover, the Court had previously warned Ford that her arguments were frivolous, but still she persisted. In the orders dismissing *Nelson* and *Stewart*, Ford was warned that similar arguments were "frivolous" and "irrelevant." *Nelson*, 5:24-cv-1244-LCB, ECF Nos. 17 & 26; *Stewart*, 5:25-cv-581-LCB, ECF No. 31. Here too, in three separate orders the Court told Ford her arguments had been soundly rejected by the Eleventh Circuit. (Docs. 13, 19 & 27). Despite these admonitions, Ford continued to push theories of law she knew or should have known to be baseless.

3.    By making false statements of law to the Court, Ford violated Alabama Rule of Professional Conduct 3.3(a)(1). As explained in the findings above, courts throughout the country have uniformly rejected the legal theories Ford has espoused in each of these cases. As another judge in this district has put the matter, "[t]he conspiracy and legal revisionist theories of 'sovereign citizens' are not established law in this court or anywhere in this country's valid legal system." *Santiago v. Century 21/PHH Mortg.*, No. 1:12-cv-2792-KOB, 2013 WL 1281776, at *5, (N.D. Ala. Mar. 27, 2013) (Bowdre, J.).

4.    Moreover, by filing pleadings, motions, and other papers that advanced frivolous legal theories, Ford committed bad-faith misconduct. Ford was twice warned that her arguments had no foundation in the law, and she was twice warned

that continuing to make such arguments could lead to sanctions. Despite these warnings, Ford repeated the same arguments in filing after filing, case after case.

**B.   Ford committed bad-faith misconduct by threatening opposing counsel with litigation, sanctions, criminal liability, and referrals to state bar disciplinary committees.**

5.   Ford willfully, repeatedly, and in bad faith harassed and threatened the opposing counsel by (1) submitting documents with threats of litigation, sanctions, criminal liability, and disciplinary referrals to the Alabama State Bar; (2) sending letters to LaGanke with threats of litigation, sanctions, criminal liability, and a disciplinary referral to the Alabama State Bar; and (3) filing a retaliatory lawsuit against LaGanke.

6.   Ford threatened Alex LaGanke, Circuit Judge Ruth Ann Hall, and the Court in a slate of ten documents.[4] By way of example, in one document that she called a "notice of criminal exposure, fiduciary breach, and equity enforcement," Ford threatened "criminal liability" or "[p]rison, fines, and permanent disqualification from office" against "all parties"—a phrase meant to include non-party judicial officers like the Court—for "[a]ny further delay, concealment, or misclassification of the trust" for their alleged violations of § 18 U.S.C. §§ 2071 and 1056, 28 U.S.C. § 1361, and 12 U.S.C. § 1818(e). (Doc. 4 at 8–9).

---

[4] (Docs. 4, 5, 7, 9, 16, 17, 20, 24, 25 & 31).

7.      Similarly, Ford repeatedly and in bad faith accused the Court of misconduct for performing run-of-the-mill judicial acts. To be clear, for reasons discussed below, the Court does not sanction Ford for her conduct vis-à-vis the Court; rather, any findings concerning her threats to or disparagement of the Court are provided here to paint the full picture of her bad-faith conduct. To illustrate, when the Court issued its standard initial order, Ford accused it of committing "misconduct" and a "breach of fiduciary oath," arguing that it had lacked jurisdiction to enter the order. (Doc. 4 at 7; Doc. 16 at 7). When the Court set the case for hearings and ordered her to attend, she accused the Court of unconstitutionally "attempt[ing] to compel appearances and telephone conferences despite the Trust's formal objection and repeated Ex Parte Notices of Non-Appearance." (Doc. 16 at 7). A week into the case, she concluded that the Court had not disposed of the matter promptly enough, so she accused the Court of violating Alabama's Canons of Judicial Ethics. (Doc. 24 at 8). Finally, she accused the Court of bias, first because she believed (for reasons unspecified) that it had failed to "maintain impartiality," and then (again for reasons unspecified) because its "impartiality might reasonably be questioned." *Id.*; (Doc. 31 at 7). Thus, she claimed, the Court was "disqualified from further participation" in the case and "must withdraw from handling Trust res." (Doc. 31 at 7). For these actions, Ford threatened to "escalate" the matter to the Alabama Supreme Court for "protective intervention" and refer the Court to the Judicial Inquiry Commission, the

Alabama State Bar, the Eleventh Circuit Judicial Council, and the Office of the Inspector General. (Doc. 4 at 9–10; Doc. 9 at 6; Doc. 16 at 6; Doc. 25 at 28; Doc. 31 at 7).

8.      Ford also repeatedly threatened her opposing counsel, Alex LaGanke, with both sanctions under Rule 11 and referrals to the Alabama State Bar. In one of her many "notices" filed early in *White*, for instance, Ford accused LaGanke of "Rule 11 fraud" for which she threatened sanctions and a disciplinary referral. (Doc. 16 at 7). Later, in four letters emailed to LaGanke, Ford threatened to refer the matter to the Alabama State Bar, accused her of professional misconduct, and warned her that "one more misstep would trigger immediate escalation." (Docs. 17, 20-2, 23-1 & 23-2).

9.      Most egregiously, Ford's threats of sanctions, disciplinary referrals, and "escalation" culminated in a bad-faith, retaliatory lawsuit against LaGanke. *LaGanke*, 5:25-cv-1685-LCB, ECF No. 1-1. According to the complaint, LaGanke had violated the Alabama Rules of Professional Conduct by harassing, threatening, and attempting to intimidate Ford; by filing frivolous threats on a void docket; and by engaging in misconduct, abuse of process, and conduct prejudicial to the administration of justice. *Id.* Ford's intention could only have been to harass opposing counsel, because her lawsuit lacks any basis in fact or law. For instance,

although the suit was filed in the name of the Brackins El Beneficiary Trust, the allegations concern Ford herself.

The case's context belies its retaliatory purpose. Only days before, LaGanke had notified Ford by e-mail that the Government planned to seek Rule 11 sanctions against her. Rather than correct or withdraw her filings or respond to the motion on its merits, she sued LaGanke. *Id.* Moreover, on October 15, Ford objected to LaGanke's timely motion for extension of time to respond to the complaint, asserting that LaGanke was "in default" and therefore not entitled to an extension because 21 days had already passed without a response. But Ford had filed her complaint only 14 days earlier; LaGanke was well within the response period. This was not a simple miscalculation; rather, Ford knowingly misrepresented the deadlines and objected to the motion in bad faith to retaliate for the Government's Rule 11 motion.

10.    Ford's allegations that LaGanke had committed professional misconduct are entirely baseless. Having observed Ms. LaGanke in open court and reviewed the record in each of these cases, the Court finds Ford's allegations to be entirely without merit. LaGanke has committed none of the improprieties whatsoever with which she has been accused.

11.    By filing pleadings, motions, and other papers for the improper purpose of threatening and harassing opposing counsel, Ford violated Rule 11(b)(2).

Courts apply a subjective standard to determine whether there was an "improper purpose" on behalf of the attorney who submitted the filing. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 639 (11th Cir. 2010). Examples of an improper purpose include an attorney's intent to "harass, cause unnecessary delay, or needlessly increase the cost of the litigation." FED. R. CIV. P. 11(b)(1). An improper purpose can often be "inferred from circumstantial evidence," such as "excessive persistence in pursuing a claim or defense in the face of repeated adverse ruling," or the submissions of "factually or legally frivolous claims." *Thompson,* 610 F.3d at 665–66 (Tjoflat, C.J., concurring in part) (internal citations omitted).

At least ten of Ford's pleadings, motions, and other papers, including her complaint against LaGanke, were filed for the improper purpose of harassing and threatening opposing counsel. These documents contain express threats of criminal liability, sanctions, litigation, and referrals to the Alabama State Bar that are wholly unwarranted by fact or law. What Ford called sanctionable misconduct was nothing more than routine case administration and zealous advocacy.

12.    By filing a suit against LaGanke, asserting frivolous objections, and advocating baseless sanctions with the knowledge that that these actions would serve merely to harass or maliciously injure, Ford violated Rule 3.1(a) of Alabama Rules of Professional Conduct.

13.    Moreover, by violating Rule 3.1(a) of the Alabama Rules of Professional Conduct, and by engaging in conduct involving misrepresentation, conduct that is prejudicial to the administration of justice, and conduct that adversely reflects on her fitness to practice law, Ford committed professional misconduct under Alabama Rules of Professional Conduct 8.4(a), (c), (d), and (g).

### C.   Ford committed sanctionable misconduct by willfully violating five Court orders.

14.    Ford committed willful, bad-faith misconduct by skipping hearings and ignoring deadlines in violation of five court orders. (Docs. 8, 10, 11, 13 & 19). Specifically, Ford violated (1) the Court's September 18 order that Ford attend an in-person status conference at 10:30 a.m. on September 23 (Doc. 8); (2) the Court's September 19 order that Ford appear for a telephone conference at 1:30 p.m. on September 19 (Doc. 10); (3) a second September 19 order that Ford appear for the telephone conference at 1:30 p.m. that afternoon (Doc. 11); (4) the Court's September 19 order that Ford appear for a telephone conference at 9:30 a.m. on September 22 and provide certain details concerning her alleged inability to attend the September 23 status conference (Doc. 13); and (5) the Court's September 22 order that Ford provide certain details concerning her alleged inability to attend the September 23 status conference (Doc. 19).

    Ford violated the Court's September 18 order that she attend an in-person status conference at 10:30 a.m. on September 23 (Doc. 8). In defiance of this order,

Ford failed to appear at the hearing. Although Ford "objected" to the status conference on two grounds, neither ground excused her attendance. First, she claimed that the status conference was "ultra vires absent jurisdiction established on the record"; second, that she was scheduled to appear for a hearing at 9:00 the same morning in the Circuit Court of Williamson County, Tennessee, for the case of *Tyrone Bledsoe v. Truist Bank*, 24-CV-171. For reasons discussed above, the first contention was patently frivolous. For reasons discussed below, the second was insufficient to excuse her absence at the hearing.

Ford violated the Court's September 19 orders that she appear for a telephone conference at 1:30 p.m. on September 19. (Docs. 10 & 11). As with the September 23 hearing, Ford objected to the telephone conference on the twin grounds that the Court lacked jurisdiction to hold the hearing and that a conflict prevented her from attending it. As before, the first contention was plainly frivolous. But so too was the second.

Ford claimed she couldn't attend the hearing because she was "currently out of state due to a death in her family." The claim was not that she had a service to attend at 1:30, say, or that funeral preparations would take the whole afternoon; her filing was bereft of any such concrete details. Rather, the problem was merely that she was "out of state." The Court thus reminded her that telephone hearings can be attended remotely, but she followed up with no reason why she could not make the

logistics of out-of-state telephonic communication work for her. Instead, she skipped the hearing.

Ford violated the Court's September 19 order that she appear for a telephone conference at 9:30 a.m. on September 22 and her September 19 and its September 22 orders that she provide details of the alleged conflict in Tennessee. (Docs. 13 & 19). In defiance of the Court's September 19 order, Ford skipped the conference without explanation or excuse. In defiance of both orders, she failed to submit any information about the case, the judge, or the hearing at all. (Minute Entry dated September 22, 2025).

Ford failed to submit any information about her allegedly conflicting hearing despite two court orders to do so. Whether Ford was indeed scheduled to attend another hearing in another state at the same time on the same day—a doubtful proposition—she was nevertheless required to comply with the Court's orders. Had she filed the information she was ordered to file and proven the existence of the conflict, the Court would likely have rescheduled the hearing. But she didn't, and the hearing went ahead.

15.    By knowingly disobeying her obligations to attend the three hearings and file information concerning her hearing in Tennessee, Ford violated Alabama Rule of Professional Conduct 3.4©.

### D. Ford committed sanctionable misconduct by equivocating with the Court about her inability to attend the September 19 status conference.

16. The Court finds by clear and convincing evidence that Ford committed bad-faith misconduct by lying about her inability to attend the September 19 telephone conference. As explained above, Ford gave no adequate reason why she could not attend a telephone conference at 1:30 p.m. on September 19. Although she claimed in a "notice of nonappearance" that she couldn't attend because she was out of state for a death in the family, she pointed neither to a conflict at the time of the hearing nor a technical hurdle to calling in. To the contrary, Ford submitted an eight-page filing less than forty minutes before the call, belying any suggestion that she was either out of range to make the call or lacked five minutes to spare for a telephone conference.

17. By knowingly making a false statement of material fact concerning her ability to attend the telephone conference on September 19, Ford violated Alabama Rule of Professional Conduct 3.3(a)(1).

## IV. SANCTIONS

The Court has found by clear and convincing evidence that Ford engaged in intentional bad-faith misconduct; presented pleadings for an improper purpose; advanced claims, defenses, and other legal contentions not warranted by existing law or any nonfrivolous argument to extend, modify, or reverse it; and committed acts

and omissions that violate the Alabama Rules of Professional Conduct. *See* supra pp. 33–50. These findings establish not mere error or negligence, but a sustained course of willful disobedience and abuse of the judicial process.

In fashioning these sanctions, the Court has considered the nature and severity of Ford's misconduct and the needs to vindicate judicial authority, deter similar conduct by Ford and others, and impose sanctions no more severe than necessary to achieve their legitimate remedial and deterrent purposes. Having considered each of these, the Court concludes that a public reprimand and disbarment from the bar of the U.S. District Court for the Northern District of Alabama are warranted.

A public reprimand is appropriate to mark the seriousness of Ford's misconduct and provide clear notice to the bar that the Court will not tolerate disregard for court-ordered hearings and deadlines, pushing baseless theories of law and patently frivolous pleadings, or threats and harassment directed at opposing counsel. Conduct of this kind does not merely burden an opposing party; it consumes scarce judicial resources and undermines respect for the rule of law. Were conduct like this to go unchecked, the judicial system would grind to a halt.

A public reprimand is also reasonable because Ford has shown a pattern of misconduct rather than an isolated lapse of judgment. Beginning with *Stewart* and *Nelson*, the Court warned her that similar conduct could warrant sanctions, and those suits were dismissed in part for their frivolousness. And yet she persisted. She has

continued to push the same frivolous theories throughout this litigation and forsaken her ethical duties as an officer of the court.

At the same time, a public reprimand alone would not suffice. Ford's misconduct throughout the litigation—including suing opposing counsel, continually threatening counsel with sanctions, flouting fundamental professional norms, and disobeying court orders—has shown that Ford is unlikely to be deterred by reputational consequences. A public reprimand, though necessary, is not sufficient.

The Court considered whether a temporary suspension from practice would adequately address Ford's misconduct and has found that it would not. A temporary suspension from practice might have been appropriate if Ford had shown either contrition or a willingness to remediate her misconduct, but she has done neither. Ford's misconduct was knowing, continual, and directed at the Court's core authority to manage its proceedings and enforce its orders, and so on this record a temporary suspension could not adequately vindicate judicial authority. If anything, Ford's demonstrated contempt for lawful process suggests that a temporary suspension would at best postpone future misconduct and at worst amplify it when she returned to practice.

Disbarment is among the most severe sanctions available, and the Court does not impose it lightly. Here, however, disbarment is necessary to safeguard the

integrity of the Court and prevent Ford from committing misconduct in the future. When Ford first advanced sovereign-citizen claims in the now-dismissed *Nelson* and *Stewart*, she was warned that her pleadings, motions, and other papers could be grounds for sanctions. When the Court scheduled hearings in those cases, Ford refused to attend. The cases were dismissed as frivolous, but Ford turned right around and filed three new lawsuits in Alabama state court against the same defendants, once more advancing the same patently frivolous theories the Court had already rejected. When this forum-shopping stratagem failed, Ford resorted to threats, harassment, and contumacy. The Court ordered a status conference; she accused it of misconduct. Opposing counsel asked her to withdraw or correct frivolous contentions; she sued her.

To be clear, the Court is *not* sanctioning Ford for the threats she made in bad faith to the Court and its officers, even though these threats, and the allegations of judicial misconduct that underlay them, were self-evidently baseless. Attorneys should be able to report judicial misconduct without fear of reprisal, and the risk, however de minimis, that sanctioning Ford for her bad-faith complaints might chill the legitimate complaints of others is unacceptable.

Ford's misconduct is incompatible with the orderly administration of justice. A lawyer who rejects the Court's authority to schedule hearings, set deadlines, and exercise jurisdiction over the parties who appear before it cannot be trusted to

discharge the most basic duties of the profession. Ford's thoroughgoing contempt and entrenched pattern of misconduct thus demonstrates her unfitness to practice in this district. Since no lesser sanction is likely to secure compliance with the Court's orders and stem the tide of frivolous filings, the Court concludes that disbarment from the Northern District of Alabama is appropriate and reasonable.

Finally, the Court has considered lesser sanctions and concluded that no lesser alternatives would suffice. For instance, the Court considered monetary sanctions, including attorneys' fees as an award for the time spent responding to frivolous filings, but it rejected them as a poor fit here. Where the opposing party is the Government and the litigation remains in the early stages of pleading, an award of attorneys' fees would neither meaningfully compensate the Government for the institutional costs it incurred nor adequately vindicate judicial authority. Nor is there reason to believe that a monetary sanction would deter Ford, since she has persisted in her misconduct notwithstanding a host of earlier warnings and dismissals. Only a public reprimand and disbarment from practice in the Northern District of Alabama will do that.

## V.    CONCLUSION

The Court therefore **ORDERS** as follows:

1. The Court **PUBLICLY REPRIMANDS** Kimberly Ford for the misconduct described in this order.

2. To effectuate this public reprimand, Ford must provide a copy of this order in every pending state or federal case in which she is counsel of record to her clients, opposing counsel, and the judge presiding over the matter. Ford must comply with this requirement within ten days from the date of this order and must certify to the Court within 24 hours of its completion that the requirement has been met.

3. The Court **DISBARS** Kimberly Ford from practice in the United States District Court for the Northern District of Alabama.

4. The Clerk of Court is **DIRECTED** to serve a copy of this matter on the General Counsel of the Alabama State Bar Association and the Chief Disciplinary Counsel for the Board of Professional Responsibility of the Supreme Court of Tennessee to determine if disciplinary action should be taken.

5. The Clerk of Court is **DIRECTED** to serve a copy of this order on every judge in the Circuit and District Courts of Madison County, Alabama.

6. Having found that Ford engaged in a pattern of willful contempt and that lesser sanctions would be insufficient, the Court **GRANTS** the Government's oral motion to dismiss and **DISMISSES WITH PREJUDICE** all claims in *The Brackins El Pr. Est. v. White*, 5:25-cv-

1568-LCB; *The Brackins El Pr. Est. Tr. v. Bondi*, 5:25-cv-1600-LCB;

*The Brackins El Pr. Est. Tr. v. Mack*, 5:25-cv-1607-LCB; and *The*

*Brackins El Pr. Est. Tr. v. LaGanke*, 5:25-cv-1685-LCB.

The Clerk is **DIRECTED** to close these four cases.

**DONE** and **ORDERED** this January 23, 2026.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

56